SZAFERMAN, LAKIND,
BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
By: Arnold C. Lakind
      Brian G. Paul
      Robert L. Lakind
Telephone: (609) 275-0400
Fax: (609) 275-4511

LEVY, PHILLIPS & KONIGSBERG, LLP
800 Third Avenue, 11th Floor
New York, New York 10022
By: Moshe Maimon
      Danielle Disporto
Telephone: (212) 605-6200
Fax: (212) 605-6290


Attorneys For Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICHOLAS DANZA, individually and on behalf of Employee Retirement Income Security Act of 1974, as amended ("ERISA"), Defined Contribution Plans That Used FMR LLC As Their Qualified Domestic Relations Order Service Provider, and the participants and beneficiaries of all such ERISA-covered employee benefit plans;<br><br>      Plaintiffs,<br><br>vs.<br><br>FMR LLC,<br><br>      Defendant. | Case Number:<br><br><br>**CLASS ACTION COMPLAINT**<br>**AND**<br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff Nicholas Danza ("Plaintiff Danza"), whose street address is 358 Wycoff Way West, East Brunswick, NJ 08816, individually and on behalf of those Employee Retirement Income Security Act of 1974, as amended ("ERISA"), defined contribution plans (i.e., 401(k) plans) that used FMR, LLC ("Defendant" or "Fidelity"), whose street address is 82 Devonshire Street, Boston MA 02109, as their Qualified Domestic Relations Order ("QDRO") service provider, and were charged and continue to be charged unreasonable and excessive fees by FMR, LLC for QDRO services, brings this action against Fidelity for breach of its fiduciary duties under ERISA.

## I.    OVERVIEW

1.    Divorce is a growing social phenomenon in our country with nearly half of first-time marriages ending in divorce.  One important issue in most divorces is the division of assets acquired during the marriage.  All fifty (50) states have enacted divorce laws providing that, with certain limited exceptions, an asset acquired during the marriage is subject to division.  Like cars, houses and bank accounts, retirement assets contributed to a 401(k) plan during the marriage are generally subject to division as part of the divorce process.  Accordingly, divorcing spouses entering into a settlement agreement, or state courts when the litigants cannot reach a settlement on their own, are often required to divide retirement accounts as part of the final resolution of the case.

2.    ERISA's anti-alienation provision, which is codified at § 206(d), 29 U.S.C. § 1056(d), with some exceptions, prohibits the assignment of a participant's interest in a defined contribution plan (i.e., a 401(k) plan).  In the case of a divorce, an exception exists if the assignment/division of a participant's 401(k) account is done

1

pursuant to a domestic relations order ("DRO") that satisfies certain requirements codified in ERISA § 206(d)(3), 29 U.S.C. § 1056(d)(3). If upon the review of the DRO, it is determined that the DRO satisfies the statutory requirements, then the DRO is classified as a "Qualified Domestic Relations Order" ("QDRO").

3. The QDRO is the operative instrument that divides a participant's 401(k) benefits between the participant and his or her former spouse.

4. QDROs are a unique area of family law. In every other aspect of divorce, state courts have complete power to make all decisions and enter all orders necessary to resolve the case. When QDROs are used, however, that power is shared between the courts and the QDRO administrator.

5. An administrator of QDROs for a plan has specific responsibilities and duties with respect to QDROs, which makes them plan fiduciaries. As such, they are required to act prudently and solely in the interests of plan participants and beneficiaries.

6. Furthermore, with respect to the fees a plan's QDRO administrator may charge for its services, the Department of Labor ("DOL") specifically limits those fees to the *"reasonable expenses"* incurred in connection with the administration of the QDRO. See DOL publication "The Division of Retirement Benefits Through Qualified Domestic Relations Orders." § 2-6 (hereinafter "DOL QDRO Pub.")

7. As Fidelity states on its website, it is the "nation's No. 1 provider of workplace retirement savings plans…." As of June 30, 2010, Fidelity operated 17,000 defined contribution plans.

8. Fidelity, in operating a 401(k) plan, provides "[i]ntergrated services" which include, among other things, offering Fidelity mutual funds for investment, record

603428

keeping services, and serving as the plan's "QDRO Service Provider" (the term "QDRO Service Provider" is the term Fidelity uses to describe its QDRO services).

9.      While acting as a plan's QDRO Service Provider, Fidelity has stepped into the role of plan administrator with respect to reviewing QDROs for the thousands of retirement plans (referred to herein as the "Plaintiff Plans") that Fidelity services.

10.      For its QDRO services, Fidelity assesses unreasonable and excessive fees to the Plaintiff Plans and their participants (the participants of the Plaintiff Plans are hereinafter referred to as the "Plaintiff Participants"), which bears no relation to the services actually rendered by Fidelity, or the expenses it incurs in rendering such services.  This unreasonable and excessive fee denies each participant and beneficiary the full value of their benefits.

11.      In Plaintiff Danza's case, Fidelity charged a $1,200 QDRO review fee. By way of comparison, other third-party companies throughout the United States will perform QDRO reviews for $200 to $300, or 16.6% to 25% of the cost Fidelity charges.

12.      The Federal Government recommends that generally an attorney should charge approximately $450 to draft a QDRO for a defined benefit plan (which is more complicated than a QDRO associated with a defined contribution plan).  Thus, Fidelity is charging, to review a defined contribution QDRO, a fee that is approximately three times the amount an attorney would charge to draft a more complicated defined benefit QDRO.

13.      Plaintiff Danza files this ERISA action against Fidelity, individually, and on behalf of the Plaintiff Plans and the participants and/or beneficiaries of the Plaintiff Plans that used Fidelity as its QDRO Service Provider and that were charged unreasonable and excessive fees by Fidelity in connection with its QDRO services.

3

14.    Plaintiffs allege that Fidelity, in charging Plaintiffs unreasonable and excessive fees for QDRO services, violated ERISA by, *inter alia*: (a) failing to act prudently toward the Plaintiff Plans for which it is a fiduciary; (b) failing to provide benefits to the Plaintiff Participants; (c) failing to take steps to defray reasonable costs when managing the Plaintiff Plans' assets; and (d) failing to act solely in the interest of the Plaintiffs.

15.    Fidelity's violations have denied the Plaintiffs the full value of their retirement benefits.

16.    Plaintiffs seek, on account of Fidelity's ERISA violations, disgorgement, restitution and monetary damages.

## II.    JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over the claims herein pursuant to 28 U.S.C. § 1331, and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

18.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## III.    PARTIES

### A.    Plaintiffs

19.    The Plaintiff Plans are defined contribution plans (*i.e.*, 401(k) plans), subject to ERISA, for which Fidelity served/serves as these plans' QDRO Service Provider.

20.    The Plaintiff Participants are certain participants, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), and/or beneficiaries within the meaning of ERISA § 3(8), 29 U.S.C. § 1002(8), of the Plaintiff Plans. The Plaintiff Participants also include, any

"alternate payee," as such term is defined in ERISA § 206(d)(3)(K), 29 U.S.C. § 1056(d)(3)(K), of a participant of a Plaintiff Plan (see also ERISA § 206(d)(3)(J), 29 U.S.C. § 1056(d)(3)(J), which states that "[a] person who is an alternate payee under a qualified domestic relations order shall be considered for purposes of any provision of this Act [ERISA] a beneficiary of the plan.")

21.     The Plaintiff Plans and Plaintiff Participants, which includes Plaintiff Danza, are occasionally hereinafter collectively referred to as "Plaintiffs."

22.     Plaintiff Danza was a participant, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), of the Great Atlantic & Pacific Tea Company, Inc. Savings Plan, a Plaintiff Plan. Thus, the Plaintiff Participants include, among others, Plaintiff Danza.

23.     Plaintiff Danza, and his former spouse, as the alternate payee (as such term is defined in ERISA § 206(d)(3)(K), 29 U.S.C. § 1056(d)(3)(K)), submitted a DRO to Fidelity for review and qualification in order to effectuate the equitable distribution of certain retirement assets of Plaintiff Danza in accordance with the terms of their Final Judgment of Divorce.   For its services in determining that the DRO was a QDRO, Fidelity charged a fee equal to $1,200.

24.     Plaintiff Danza files this action as a derivative action on behalf of the Plaintiff Plans pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), to recover assets of such plans that Fidelity improperly acquired in violation of ERISA and for monetary damages.

25.     Plaintiff Danza files this action as a class action on behalf of the Plaintiff Plans, and on behalf of the participants and beneficiaries of those plans, pursuant to

603428

ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3), to recover the full value of their retirement benefits of which they were deprived by Fidelity's actions

26.     The conduct complained of herein is continuing in nature, and Plaintiffs seek recovery from the earliest date permitted under the law and through the date of final judgment.

**B.      Defendant**

27.     FMR LLC (i.e., Fidelity) is the "nation's No. 1 provider of workplace retirement savings plans...."   On information and belief Fidelity is a Massachusetts corporation.   Its principal place of business is 82 Devonshire Street, Boston, Massachusetts 02109.

**IV.   LAW**

**A.      ERISA-Generally**

28.     ERISA, codified at 29 U.S.C. § 1001, *et seq*, was enacted, in part, to ensure "the soundness and stability of plans with respect to adequate funds to pay promised benefits." ERISA § 2(a), 29 U.S.C. § 1001(a).

29.     A 401(k) plan is a defined contribution plan, which is subject to ERISA. ERISA § 3(34), 29 U.S.C. § 1002(34).

30.     Under ERISA, a "defined contribution plan" is "a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." ERISA § 3(34), 29 U.S.C. § 1002(34).

31.     All of the Plaintiff Plans are defined contribution plans.

32.     Pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), a person (or entity) is a fiduciary with respect to a retirement plan to the extent that he/she (or it):

> (i)     exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets;
>
> (ii)    renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of such plan, or has any authority or responsibility to do so; or
>
> (iii)   has any discretionary authority or discretionary responsibility in the administration of such plan.

33.     When managing the assets of a retirement plan subject to ERISA, a fiduciary must discharge its duties with respect to such plan solely in the interest of the plan's participants and beneficiaries and for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries and (ii) defraying reasonable expenses of administering the plan. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

34.     When managing the assets of a retirement plan subject to ERISA, a fiduciary must act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

35.     Pursuant to ERISA § 409, 29 U.S.C. § 1109, any fiduciary that violates ERISA § 404, 29 U.S.C. § 1104, with respect to an ERISA plan, is liable to "make good" for

> any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the

7

603428

fiduciary, and shall be subject to such other equitable or
remedial relief as the court may deem appropriate.

**B.      ERISA-QDRO/DRO Law**

36.      Generally, a defined contribution plan (i.e., 401(k)s) may only pay
benefits to the plan's participants.

37.      Participants of a 401(k) plan, absent an exception, may not assign or
alienate the assets in their 401(k) accounts. ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1).

38.      ERISA § 206(d)(3)(A), 29 U.S.C. § 206(d)(3)(A), contains one such
exception and it permits defined contribution plans to honor the terms of a DRO, if it
satisfies certain requirements and thus would be classified as qualified (i.e., a QDRO).

39.      Generally, a DRO is a judgment or order issued by a court, pursuant to
state domestic relations law, in connection with divorce proceedings, and provides for the
payment of alimony, child support or the division of marital retirement assets.

40.      Under ERISA, the non-participant that receives a portion of the
participant's 401(k) account pursuant to the terms of a DRO, that is determined to be
qualified, is referred to as the "Alternate Payee." The only persons that can qualify as
Alternate Payees are: the plan participant's: (a) spouse, (b) former spouse, (c) child, or
(d) other dependent. ERISA § 206(d)(3)(K), 29 U.S.C. § 1056(d)(3)(K).

41.      Therefore, for purposes of this Complaint, the person whose retirement
plan assets are being divided or distributed pursuant to the QDRO is referred to as the
"Participant" (because he or she is the participant in the retirement plan as defined under
ERISA § 3(7), 29 U.S.C. § 1002(7). The person to whom the Participant's retirement

plan assets are being transferred to (i.e., the Participant's former spouse) is referred to as the "Alternate Payee."

42.     Pursuant to ERISA § 206(d)(3)(C), 29 U.S.C. § 1056(d)(3)(C), for a DRO to be qualified (i.e., to be a QDRO), it must contain the following: (1) the names and addresses of the Participant and each Alternate Payee; (2) the amount or percentage of the Participant's benefit to be paid to the Alternate Payee; (3) the number of payments or period to which the order applies; and (4) the name of the plan.

43.     The above four categories of information are the only requirements under ERISA that a DRO must contain in order to be qualified.

44.     ERISA § 206(d)(3)(D), 29 U.S.C. § 1056(d)(3)(D), sets forth the provisions that a DRO may not contain. A DRO will fail to qualify as a QDRO if it: (1) provides any type or form of benefit, or any option, not otherwise provided under the applicable plan; (2) provides for increased benefits (determined on the basis of actuarial value) to be paid to the Alternate Payee which are greater than those to which the participant is entitled under the plan; and (3) pays benefits to the Alternate Payee which are required to be paid to another Alternate Payee under another DRO previously determined to be a QDRO. ERISA § 206(d)(3)(D), 29 U.S.C. § 1056(d)(3)(D).

45.     In determining whether to qualify a DRO, a plan administrator is only required to evaluate the DRO to identify whether it meets the above legal requirements.

46.     Pursuant to ERISA, upon qualification of a DRO, the Alternate Payee is treated as a beneficiary under the applicable defined contribution plan. ERISA § 206(d)(3)(J), 29 U.S.C. § 1056(d)(3)(J).

603428

47.     Thus, the DRO (Domestic Relations Order) portion is the responsibility of the applicable state court issuing the order.   The Q (Qualified) portion is the responsibility of the retirement plan's QDRO Service Provider.

48.     If the administrator determines that the DRO is not a valid QDRO, as required under ERISA, the administrator must provide the following information to the Participant and the Alternate Payee: (1) the reasons why the DRO is not a QDRO; (2) references to the plan provisions on which the determination is based; (3) an explanation of any time limits that apply; and (4) a description of any additional information or modifications necessary for the DRO to be a QDRO and an explanation as to why it is necessary.

49.     With respect to the fees that may be charged by the QDRO administrator, according to the DOL, it may only charge the "reasonable expenses" incurred in connection with the QDRO determination. DOL QDRO Pub. § 2-6.  These expenses are charged to the individual account of the specific Participant and also may be charged to/shared by the account established under the plan for the Alternate Payee.

**C.     ERISA-Relief Provisions**

50.     Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1332(a)(2), a participant or beneficiary of a defined contribution plan has standing to bring a complaint for any relief under ERISA § 409, 29 U.S.C. § 1109.

51.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), a participant or beneficiary has standing to bring a claim to: (A) enjoin any practice that violates ERISA or (B) obtain other equitable relief to: (i) to redress a violation of ERISA or (ii) to enforce any provision of ERISA.

603428

52.     Pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), a court, in its discretion, may allow for payment of reasonable attorneys' fees and costs associated with an action arising under ERISA.

53.     Plaintiffs bring this action pursuant to ERISA §§ 409(a) and 502(a)(2), (3) and (g), 29 U.S.C. §§ 1109(a), and 1132(a)(2), (3) and (g) for, among other relief, the following:

A.     A declaratory judgment holding that the acts of Defendant described herein violate ERISA;

B.     A permanent injunction against Defendant prohibiting the practices described herein;

C.     Disgorgement and/or restitution of all excessive fees charged to the Plaintiff Plans and received by Defendant;

D.     Payment of monetary damages;

E.     Attorneys' fees, costs and other recoverable expenses of litigation; and

F.     Such other and additional legal or equitable relief that the Court deems appropriate and just under all of the circumstances.

## V.     FIDELITY'S MISCONDUCT AS THE PLAINTIFF PLANS' QDRO SERVICE PROVIDER

### A.     Fidelity's QDRO Business

54.     Defendant Fidelity serves as the QDRO Service Provider to the Plaintiff Plans. In that capacity, Fidelity performs QDRO (a) review, (b) qualification and (c) administration services for these plans, and receives fees for such services from such plans.

11

55.     Fidelity has stepped into the role of plan administrator while processing QDROs for the Plaintiff Plans and is therefore a fiduciary under ERISA.

56.     Fidelity, as a fiduciary in its capacity as the Plaintiff Plans' QDRO Service Provider, has breached its fiduciary duties under ERISA by charging Plaintiffs $1,200 for its QDRO services.

57.     As a result of Fidelity's ERISA violations, the Plaintiffs have been denied the full value of their retirement benefits.

**B.      As the Plaintiff Plan's QDRO Administrator, Fidelity is a Fiduciary to the Plaintiff Plans**

58.     A person (or entity) is a fiduciary to the extent he: "(i) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of disposition of its assets,...or (iii) has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

59.     To fulfill ERISA's express remedial purpose, the term fiduciary is to be construed broadly.

60.     "[F]iduciary status under ERISA is not an all-or-nothing concept, and a court must ask whether a person is a fiduciary with respect to the particular activity at issue." Cotton v. Massachusetts Mut. Life Ins. Co., 402 F.3d 1267, 1277 (11th Cir. 2005) (internal quotations omitted).

61.     For several reasons Fidelity, as the Plaintiff Plans' QDRO Service Provider, is/was a fiduciary to the Plaintiff Plans pursuant to ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii).   Any of the activities described below are

12

sufficient in themselves to confer fiduciary status upon Fidelity with respect to the Plaintiff Plans.

62.     Fidelity is a fiduciary to the Plaintiff Plans pursuant to ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), because it makes the determination, for the Plaintiff Plans, as to whether a DRO is a QDRO.

63.     Fidelity is a fiduciary to the Plaintiff Plans pursuant to ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), because according to Fidelity it serves as the arbitror if the "parties [are] disputing a domestic relations order qualified by Fidelity...." According to Fidelity, "For purposes of ...[its] Guidelines 'dispute' shall mean that one or more of the Parties are questioning the terms and/or interpretation of a Qualified Domestic Relations Order or the amount awarded to the Alternate Payee pursuant to the Qualified Domestic Relations Order."

64.     Fidelity is a fiduciary to the Plaintiff Plans pursuant to ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), because upon notice of a "dispute," Fidelity, unilaterally, places "temporary disbursement restrictions on both the Participant's and the Alternate Payee's account," while it resolves the dispute.

65.     Fidelity is a fiduciary to the Plaintiff Plans pursuant to ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), because it has unilateral discretion to determine and change the amount of fees it charges the Plaintiffs for its QDRO services; as a result, of this discretion, Fidelity can affect the amount of the Plaintiffs' retirement benefits.

66.     Fidelity is a fiduciary to the Plaintiff Plans pursuant to ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), because while Fidelity is

making its determination as to whether, in its opinion, a DRO is a QDRO, it prohibits "distributions to the Participant or any other person of any amounts that [in its opinion][1] would be payable to the Alternate Payee if the domestic relations order were determined to be a QDRO." (DOL QDRO Pub. § 2-13)

67.     Fidelity is a fiduciary to the Plaintiff Plans pursuant to ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), because if the DRO is silent regarding whether the Alternate Payee is entitled to any earnings that accrue in the Participant's account during the time period in which Fidelity is deciding whether the DRO is qualified, Fidelity, unilaterally decides that it will not provide any such earnings to the Alternate Payee, which results in the Alternate Payee receiving a smaller amount of benefits.

68.     Fidelity is a fiduciary to the Plaintiff Plans pursuant to ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), because if, at the time of submission of the DRO, the Participant has a loan outstanding from his or her 401(k) account, and the DRO is silent on the issue as to whether the account, for division purposes, should be valued as including those outstanding loan proceeds, Fidelity unilaterally decides not to include the outstanding loan proceeds in its valuation of the Participant's account,  which results in the Alternate Payee receiving a lesser amount of benefits.

---

[1] Since Fidelity makes the decision as to whether the DRO is a QDRO, during the time period it is reviewing the DRO to see if it is qualified, it also decides, at its discretion, how much of the Participant's account to segregate and separately account for as being attributable to the Alternate Payee.

603428

69.     Fidelity is a fiduciary to the Plaintiff Plans pursuant to ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), because it requires that the "Alternate Payee's award must be transferred proportionately from all standard investment options in the Participant's Plan account(s) as of the date of account segregation.  Orders that provide otherwise will be treated as **non-qualified."** (emphasis in the original).

### C.     Fidelity Breached its Fiduciary Duties to the Plaintiff Plans

70.     Defendant is bound by ERISA's fiduciary duties, which have been characterized as the "highest known to law."

71.     As a fiduciary to the Plaintiff Plans, Fidelity was required by ERISA § 404(a)(1)(A)(i) and (ii), 29 U.S.C. § 1104(a)(1)(A)(i) and (ii), to discharge its duties with respect to the Plaintiff Plans solely in the interests of the Plaintiffs and for the exclusive purpose of: (i) providing benefits to the Plaintiff Participants and (ii) defraying reasonable expenses of administering the Plaintiff Plans.

72.     As a fiduciary to the Plaintiff Plans, Fidelity was also required by ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), to discharge its duties with respect to the Plaintiff Plans solely in the interests of the Plaintiffs with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

73.     For the Plaintiff Plans, Fidelity is their QDRO Service Provider and thus has assumed responsibility for determining if a DRO qualifies as a QDRO.

74.     Fidelity charged the Plaintiffs $1,200 for this service.

15

75.     By charging a $1,200 fee for its QDRO review services, Fidelity breached its fiduciary duties pursuant to ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), because this fee was unreasonable and/or excessive.   This unreasonable and excessive fee denied the Plaintiffs the full value of their retirement benefits.

76.     Fidelity charged this $1,200 fee to confirm that the submitted DRO contains the following information: (1) the names and addresses of the Participant and each Alternate Payee; (2) the amount or percentage of the Participant's benefit to be paid to the Alternate Payee; (3) the name of the Plaintiff Plan; and (4) the number of payments or time periods to which the QDRO applies; and to also confirm that the QDRO: (1) does not provide any type of benefit not otherwise provided under the Plaintiff Plan; (2) does not require the Plaintiff Plan to pay increased benefits (determined on the basis of actuarial value); and (3) does not provide for payment of a benefit that has already been assigned to another individual.

77.     Given the amount of services Fidelity renders as the Plaintiff Plans' QDRO Service Provider, its $1,200 fee is unreasonable and excessive and bears no relation to the services that Fidelity actually rendered, or the expenses it actually, or should have, incurred.

78.     Fidelity's $1,200 review is substantially greater than the fees that the Federal Government recommends that a service provider should charge to draft a QDRO for a defined benefit plan.

79.     "The Pension Benefit Guaranty Corporation ("PBGC") is a federal agency that insures the benefits of about 44 million men and women in more than 30,000 private-

sector defined benefit pension plans." PBGC Qualified Domestic Relations Order. Dividing a retirement benefit attributable to a participant in a defined contribution plan is significantly less complicated than dividing a benefit attributable to a participant in a defined benefit plan.   According to the PBGC, "the average burden of preparing a [defined benefit] QDRO…will be…$438 to $900 in professional fees." Id.  Thus,  the amount that the Federal Government has determined to be the appropriate fee for an attorney to charge for **drafting** a QDRO for a defined benefit plan is significantly less than the fee Fidelity charges for **reviewing** a previously drafted QDRO for a less complicated defined contribution plan.

80.    A reasonable fee for drafting a QDRO for a defined contribution plan (which Fidelity itself admits is a "time-consuming and labor-intensive process") is $350 to $500.

81.    In fact, in Plaintiff Danza's case, All Pro QDRO, LLC, charged $475 to draft his QDRO.

82.    Thus, to merely review and qualify a QDRO, Fidelity is charging the Plaintiffs, $725 to $850 more than what it costs to have the QDRO drafted.

83.    Others charge no money or significantly less than Fidelity to review a DRO.

84.    Despite the fact that the bulk of services are already performed by the individual (entity) actually drafting the QDRO, which includes, but is not limited to, compiling the following information: (1) the dates that the Participant and the Alternate Payee were both married and legally separated or divorced; (2) the legal name of the Plaintiff Plan to which the QDRO applies; (3) the names, last known mailing addresses,

603428

social security numbers and dates of birth of the Participant and the Alternate Payee; (4) the Alternate Payee's relationship to the Participant; and (5) whether the QDRO relates to marital property rights, alimony payments and/or child support, Fidelity charges an unreasonable and excessive fee of $1,200 to merely review this information.

85.     As an example of the excessiveness of Fidelity's fee, on information and belief, prior to 2006, Fidelity did not charge any fees for its QDRO review services.

86.     The decision to not charge a review fee prior to 2006 further demonstrates that Fidelity's current $1,200 fee is unreasonable and excessive.

87.     As another example of the excessiveness and unreasonableness of Fidelity's $1,200 fee, in the past, it has charged $300 for its QDRO services.

88.     In one instance, Fidelity charged a fee of $300 for its QDRO services, even though the DRO was not approved after Fidelity's initial review and additional information was required in order for the DRO to be deemed qualified.  In that particular case, Fidelity had initially indicated it was going to assess its normal charge of $1,200 for its QDRO services. Subsequently, however, Fidelity, unilaterally decided to assess a lower fee of $300, which is further evidence that the $1,200 fee is unreasonable and excessive.

89.     By assessing a $1,200 fee upon the Plaintiffs, Fidelity has violated the DOL's mandate that a QDRO administrator only charge a fee that is equal to the reasonable expenses it incurs in connection with the QDRO determination.

90.     Fidelity knew or should have known that, by charging unreasonable and excessive fees to the Plaintiffs for QDRO services, it denied them the full value of their retirement benefits.

603428

91.    The $1,200 QDRO review fee is substantially disproportionate to the services Fidelity actually renders for such fee and furthermore, such fee is significantly greater than the expenses Fidelity incurs, or should incur, in determining if a DRO is a QDRO.  Thus, by charging this $1,200 fee for each QDRO it reviewed, Fidelity breached its fiduciary duties pursuant to ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B).

## VI.    CLASS ACTION ALLEGATIONS

92.    Plaintiff Danza brings this action as a class action, individually, and on behalf of the Plaintiff Plans (which are all ERISA-covered employee benefit plans), which (i) used Fidelity as their QDRO Service Provider; (ii) Fidelity approved the DRO as a QDRO on its initial review; and (iii) Participants were charged by Fidelity unreasonable and excessive fees for such services by Fidelity, and on behalf of the Participants of all such ERISA-covered employee benefit plans (i.e., these entities and persons are the "Class").

93.    The Class period for the Class begins on the earliest date on which such claims would be timely.

94.    Excluded from the Class is the Defendant, any entity in which the Defendant has a controlling interest, and the Defendant's officers, directors, affiliates, legal representatives, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice or judicial officer presiding over this matter and the members of their judicial staff.

603428

95.     The members of the proposed Class are so numerous that joinder of all members would be impracticable as required under Fed. R. Civ. P. 23(a)(1).  The total number of Class members is believed to be at least 1,000 individuals.

96.     There are questions of law and fact common to the Class as required under Fed. R. Civ. P. 23(a)(2), among them the following:

A.     Whether Defendant is a fiduciary to the Plaintiff Plans under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A);

B.     Whether Fidelity breached its fiduciary duties pursuant to ERISA § 404(a)(1)(A)(i), 29 U.S.C. § 1104(a)(1)(A)(i), by charging excessive and unreasonable fees for its QDRO services;

C.     Whether Fidelity breached its fiduciary duties pursuant to ERISA § 404(a)(1)(A)(ii), 29 U.S.C. § 1104(a)(1)(A)(ii), by charging excessive and unreasonable fees for its QDRO services; and

D.     Whether Fidelity breached its fiduciary duties pursuant to ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), by charging excessive and unreasonable fees for its QDRO services.

97.     The claims and defenses of the representative party are typical of the claims and defenses of the Class.  The representative party has no interests that are antagonistic to the claims of the Class, and understands that this matter cannot be settled without the Court's approval.

98.     The representative party will fairly and adequately protect the interests of the Class, and is committed to a vigorous prosecution of this case.

603428

99.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the Defendant.

100.    The party opposing the Class has acted on grounds generally applicable to the Class thereby making appropriate final injunctive relief or corresponding declaratory relief.

101.    The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

102.    Defendant is obligated to treat all Class members similarly under ERISA, which imposes uniform standards of conduct on fiduciaries.  Individual proceedings, therefore, would pose the risk of inconsistent adjudications.

103.    Since the damages suffered by each Class member may be relatively small, the expense and burden of individual litigation makes it impractical for class members to separately seek redress.

104.    The Class suffered, and will continue to suffer, harm as a result of Defendant's conduct.

105.    A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of the Class is impractical.

603428

106.    Even if individual Class members had the resources to pursue their own litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.

107.    Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct.

108.    The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class members' claims in a single forum.

109.    Conducting this action as a class action conserves the resources of the parties and of the judicial system, and protects the rights of the Class members.  For many, if not most Class members, a class action is the only feasible mechanism that allows them an opportunity for legal redress and justice.

110.    This Class may be certified under Fed. R. Civ. P. 23(b).

    A.    **Rule 23(b)(1).** As an ERISA breach of fiduciary duties action, this action is a classic 23(b)(1) class action.  Prosecution of separate actions by individual members would create the risk of (A) inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the Defendant opposing the Class, or (B) adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

    B.    **Rule 23(b)(2).** This action is suitable as a class action under 23(b)(2) because the Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final injunctive, declaratory or other appropriate equitable relief with respect to the Class.

603428

C.  **Rule 23(b)(3).** This action is suitable to proceed as a class action under 23(b)(3) because questions of law and fact common to the members of the Class predominate over individual questions, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiffs are aware of no difficulties likely to be encountered in the management of this matter as a class action.

## COUNT I

**BREACH OF FIDUCIARY DUTIES BY FIDELITY PURUSANT TO ERISA §§ 404(a)(1)(A)(i) AND (ii) AND (B), 29 U.S.C. §§ 1104(a)(1)(A)(i) AND (ii) AND B, FOR CHARGING THE PLAINTIFF PLANS AND THE PLAINTIFF PARTICIPANTS UNREASONABLE AND EXCESSIVE FEES FOR ITS QDRO SERVICES**

111.    Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

112.    At all relevant times, Fidelity was a fiduciary to the Plaintiff Plans pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in its capacity as the Plaintiffs' QDRO Service Provider.

113.    Pursuant to ERISA § 404(a)(1)(A)(i), 29 U.S.C. § 1104(a)(1)(A)(i), a fiduciary must discharge its duties with respect to the plans for which it serves as a fiduciary solely in the interest of the participants and beneficiaries of such plans and for the exclusive purpose of providing benefits to the plans' participants and beneficiaries.

114.    Pursuant to ERISA § 404(a)(1)(A)(ii), 29 U.S.C. § 1104(a)(1)(A)(ii), a fiduciary must discharge its duties with respect to the plans for which it serves as a fiduciary solely in the interest of the participants and beneficiaries of such plans and for the exclusive purpose of defraying reasonable expenses of administering such plans.

115.    Pursuant to ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), a fiduciary must discharge its duties with respect to the plans for which it serves as a fiduciary solely in the interest of the participants and beneficiaries of such plans and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims.

116.    Defendant charged and continues to charge the class unreasonable and excessive fees for its QDRO services.

117.    Thus, given the amount of services Fidelity renders in its QDRO review, its fee is unreasonable and excessive given that it is substantially disproportionate to the: (1) services it renders, (2) the amount of time it spends, or should spend, in rendering such services; and (3) the expenses it incurs, or should incur, in rendering such services.

118.    Fidelity, by charging the excessive and unreasonable portion of its QDRO review fee, breached its fiduciary duties pursuant to ERISA § 404(a)(1)(A)(i), 29 U.S.C. § 1104(a)(1)(A)(i), because the excessive and unreasonable portion of this fee did not result in the provision of any additional services benefitting the Plaintiff Plans or the Plaintiff Participants.  Rather, the excessive portion of the QDRO review fees only injured Plaintiffs because it denied them of the full value of their retirement benefits.

119.    Fidelity, by charging the excessive portion of its QDRO review fee, breached its fiduciary duties pursuant to ERISA § 404(a)(1)(A)(ii), 29 U.S.C. § 1104(a)(1)(A)(ii), because the excessive and unreasonable portion of this fee did not result in the provision of any additional services to the Plaintiffs and thus, by failing to

eliminate the excessive portion of this fee, Fidelity failed to defray/eliminate an unreasonable expense in administering the Plaintiff Plans.

120.    Fidelity, by charging the excessive and unreasonable portion of its QDRO review fee, breached its fiduciary duties pursuant to ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), because a prudent fiduciary acting in a like capacity and familiar with such matters would have ensured that the Plaintiff Plans and the Plaintiff Participants only paid a fee for QDRO services that was proportionate to the services actually rendered, and the expenses incurred (or the expenses a service provider acting prudently would have incurred) in rendering such services.

121.    As a direct, proximate and foreseeable result of Fidelity's breaches of fiduciary duties pursuant to ERISA §§ 404(a)(1)(A)(i) and (ii) and (B), 29 U.S.C. §§ 1104(a)(1)(A)(i) and (ii) and (B), Plaintiffs were denied the full value of their retirement benefits.

122.    As a direct, proximate and foreseeable result of Fidelity's breaches of fiduciary duty pursuant to ERISA §§ 404(a)(1)(A)(i) and (ii) and (B), 29 U.S.C. §§ 1104(a)(1)(A)(i) and (ii) and (B), the Plaintiffs suffered damages and losses.

123.    Pursuant to ERISA §§ 409 and 502(a)(2) and (3), 29 U.S.C. §§ 1109 and 1132(a)(2) and (3), Fidelity is liable to the Plaintiff Plans and the Plaintiff Participants for the losses they suffered as a direct result of Fidelity's breaches of fiduciary duties.

603428

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that this Court:

(1)      Certify this action as a class action pursuant to FED. R. CIV. P. 23(a), 23(b)(1), 23(b)(2) and/or 23(b)(3);

(2)      Declare that Defendant Fidelity was a fiduciary to the Plaintiff Plans pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A);

(3)      Declare that Defendant Fidelity violated ERISA §§ 404(a)(1)(A)(i) and (ii) and (B) (3), 29 U.S.C. §§ 1104 a)(1)(A)(i) and (ii) and (B), by charging the Plaintiffs unreasonable and excessive fees;

(4)      Order that, pursuant to ERISA §§ 502(a)(2) and (3), 29 U.S.C. §§ 1132(a)(2) and (3), Defendant Fidelity make disgorgement of all excessive fees charged to the Plaintiffs and refund such monies to the Plaintiffs;

(5)      Order that, pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), Fidelity pay to Plaintiffs monetary damages;

(6)      Order that, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Fidelity abstain from the practices described herein that violate ERISA;

(7)      Order that, pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), Plaintiffs be paid reasonable costs and attorneys fees;

(8)      Order the Defendant to pay damages to Plaintiffs in an amount sufficient to restore them to the position they would have been in had the wrongs alleged herein not been committed; and

(9)      Award interest, costs, and such other further equitable and legal relief as it deems just and proper under the circumstances.

26

603428

## JURY DEMAND

The Plaintiffs demand a trial by jury for all issues and claims above so triable

Dated: May 19, 2011

Respectfully submitted,

**SZAFERMAN, LAKIND,
BLUMSTEIN, & BLADER, P.C.**

By:  s/Arnold Lakind

Arnold C. Lakind
Brian G. Paul
Robert L. Lakind
101 Grovers Mill Road, Suite 200
Lawrenceville, NJ 08648
(609) 275-4511

**LEVY PHILLIPS & KONIGSBERG, LLP**

By:  s/ Moshe Maimon

Moshe Maimon
Danielle Disporto
800 Third Ave.
New York, NY 10022
(212) 605-6200

*Attorneys for Plaintiffs*

27

603428