SZAFERMAN, LAKIND,
BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
By: Arnold C. Lakind
    Brian G. Paul
    Robert L. Lakind
    Mark Fisher
Telephone: (609) 275-0400
Fax: (609) 275-4511

LEVY, PHILLIPS & KONIGSBERG, LLP
800 Third Avenue, 11th Floor
New York, New York 10022
By: Moshe Maimon
    Danielle Disporto
Telephone: (212) 605-6200
Fax: (212) 605-6290

Attorneys For Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

NICHOLAS DANZA, individually and on behalf of
Employee Retirement Income Security Act of 1974,
as amended ("ERISA"), Defined Contribution Plans
That Used Fidelity Management Trust Company
and/or Fidelity Investments Institutional Operations
Company, As Their Qualified Domestic Relations
Order Service Provider, and the participants and
beneficiaries of all such ERISA-covered employee
benefit plans,

      Plaintiffs,

vs.

FIDELITY MANAGEMENT TRUST COMPANY
and FIDELITY INVESTMENTS INSTITUTIONAL
OPERATIONS COMPANY,

      Defendants.

Case Number:  11-2593(AET)(TB)

**AMENDED
CLASS ACTION COMPLAINT
AND
DEMAND FOR JURY TRIAL**

**COMPLAINT**

Plaintiff Nicholas Danza ("Plaintiff Danza"), whose street address is 358 Wycoff Way West, East Brunswick, NJ 08816, individually and on behalf of those Employee Retirement Income Security Act of 1974, as amended ("ERISA"), defined contribution plans (i.e., 401(k) plans) that used Fidelity Management Trust Company ("FMTC"), whose street address is 82 Devonshire Street, Boston, MA 02109, and Fidelity Investments Institutional Operations Company ("FIIOC"), whose street address is 82 Devonshire Street, Boston, MA 02109, as their Qualified Domestic Relations Order ("QDRO") service provider, and were charged and continue to be charged unreasonable and excessive fees by FMTC and/or FIIOC for QDRO services, brings this action against FMTC and/or FIIOC for breach of their fiduciary duties and engaging in prohibited transactions under ERISA.

## I.   OVERVIEW

1.      Divorce is a growing social phenomenon in our country with nearly half of first-time marriages ending in divorce.  One important issue in most divorces is the division of assets acquired during the marriage.  All fifty states have enacted divorce laws providing that, with certain limited exceptions, an asset acquired during the marriage is subject to division. Retirement assets contributed to a 401(k) plan during the marriage are generally subject to division as part of the divorce process.  Accordingly, divorcing spouses entering into a settlement agreement, or state courts when the litigants cannot reach a settlement on their own, are often required to divide tax-qualified retirement accounts as part of the final resolution of the case.

2.      ERISA's anti-alienation provision, which is codified at § 206(d), 29 U.S.C. § 1056(d), with some exceptions, prohibits the assignment of a participant's interest in a defined contribution plan (i.e., a 401(k) plan).  In the case of a divorce, an exception exists if the division

and assignment of a participant's 401(k) account is done pursuant to a domestic relations order ("DRO") that satisfies certain requirements codified in ERISA § 206(d)(3), 29 U.S.C. § 1056(d)(3). If upon the review of the DRO, it is determined that the DRO satisfies the statutory requirements, then the DRO is classified as a "Qualified Domestic Relations Order" ("QDRO").

3.     The QDRO is the operative instrument that divides a participant's 401(k) benefits between the participant and his or her former spouse.

4.     QDROs are a unique area of family law. In every other aspect of divorce, state courts have complete power to make all decisions and enter all orders necessary to resolve the case. When QDROs are used, however, that power is shared between the courts and the QDRO administrator.

5.     An administrator of QDROs for a plan has specific responsibilities and duties with respect to QDROs, which makes them plan fiduciaries. As such, they are required to act prudently and solely in the interests of plan participants and beneficiaries.

6.     Furthermore, with respect to the fees a plan's QDRO administrator may charge for its services, the Department of Labor ("DOL") specifically limits those fees to the *"reasonable expenses"* incurred in connection with the administration of the QDRO. See <u>DOL</u> <u>publication</u> "The Division of Retirement Benefits Through Qualified Domestic Relations Orders." § 2-6 (hereinafter "DOL QDRO Pub.")

7.     While acting as a plan's QDRO administrator, providing QDRO review and qualification services, FMTC and/or FIIOC stepped into the role of plan administrator for the employee-sponsored 401(k) retirement plans (referred to herein as the "Plaintiff Plans") that FMTC and/or FIIOC service.

8.     For its QDRO services, FMTC and/or FIIOC assess(es) unreasonable and excessive fees to the Plaintiff Plans and their participants (the participants of the Plaintiff Plans are hereinafter referred to as the "Plaintiff Participants"). This unreasonable and excessive fee denies each participant and beneficiary the full value of their benefits.

9.     In Plaintiff Danza's case, Defendants charged a $1,200 QDRO review fee. By way of comparison, other third-party companies throughout the United States will perform QDRO reviews for $200 to $300, or 16.6% to 25% of the cost FMTC and/or FIIOC charges.

10.    The Federal Government recommends that generally an attorney should charge approximately $450 to draft a DRO for a defined benefit plan (which is more complicated than drafting a DRO associated with a defined contribution plan). Thus, FMTC and FIIOC are charging a fee that is approximately three times the amount an attorney would charge to draft a more complicated defined benefit DRO to review and qualify a defined contribution DRO.

11.    Plaintiff Danza files this ERISA action against FMTC and/or FIIOC, individually, and on behalf of the Plaintiff Plans and the participants and/or beneficiaries of the Plaintiff Plans that used FMTC and/or FIIOC as their QDRO administrator and that were charged unreasonable and excessive fees by FMTC and/or FIIOC in connection with its QDRO services.

12.    Plaintiffs allege that FMTC and/or FIIOC, in charging Plaintiffs unreasonable and excessive fees for QDRO services, violated ERISA by, *inter alia*: (a) failing to act prudently toward the Plaintiff Plans for which FMTC and/or FIIOC is a fiduciary; (b) failing to provide benefits to the Plaintiff Participants; (c) failing to take steps to defray reasonable costs when managing the Plaintiff Plans' assets; and (d) failing to act solely in the interest of the Plaintiffs.

13.    FMTC and/or FIIOC's violations have denied the Plaintiffs the full value of their retirement benefits.

14.     Plaintiffs seek, on account of FMTC and/or FIIOC's ERISA violations, disgorgement, restitution and monetary damages.

## II.     JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over the claims herein pursuant to 28 U.S.C. § 1331, and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## III.     PARTIES

### A.     Plaintiffs

17.     The Plaintiff Plans are defined contribution plans (*i.e.*, 401(k) plans), subject to ERISA, for which FMTC and/or FIIOC served/serves as these plans' QDRO administrator.

18.     The Plaintiff Participants are certain participants, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), and/or beneficiaries within the meaning of ERISA § 3(8), 29 U.S.C. § 1002(8), of the Plaintiff Plans.  The Plaintiff Participants also include, any "alternate payee," as such term is defined in ERISA § 206(d)(3)(K), 29 U.S.C. § 1056(d)(3)(K), of a participant of a Plaintiff Plan (see also ERISA § 206(d)(3)(J), 29 U.S.C. § 1056(d)(3)(J), which states that "[a] person who is an alternate payee under a qualified domestic relations order shall be considered for purposes of any provision of this Act [ERISA] a beneficiary of the plan.")

19.     The Plaintiff Plans and Plaintiff Participants, which includes Plaintiff Danza, are occasionally hereinafter collectively referred to as "Plaintiffs."

20.     Plaintiff Danza was a participant, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), of the Great Atlantic & Pacific Tea Company, Inc. Savings Plan ("A&P Plan"), a Plaintiff Plan. Thus, the Plaintiff Participants include, among others, Plaintiff Danza.

21.     Plaintiff Danza, and his former spouse, as the alternate payee (as such term is defined in ERISA § 206(d)(3)(K), 29 U.S.C. § 1056(d)(3)(K)), submitted a DRO to Defendants for review and qualification in order to effectuate the equitable distribution of certain retirement assets of Plaintiff Danza in accordance with the terms of their Final Judgment of Divorce.  For their services in determining that the DRO was a QDRO, Defendants charged a fee equal to $1,200.

22.     Plaintiff Danza files this action as a derivative action on behalf of the Plaintiff Plans pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), to recover assets of such plans that FMTC and/or FIIOC improperly acquired in violation of ERISA and for monetary damages.

23.     Plaintiff Danza files this action as a class action on behalf of the Plaintiff Plans, and on behalf of the participants and beneficiaries of those plans, pursuant to ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3), to recover the full value of their retirement benefits of which they were deprived by FMTC and/or FIIOC.

24.     The conduct complained of herein is continuing in nature, and Plaintiffs seek recovery from the earliest date permitted under the law and through the date of final judgment.

**B.     Defendants**

25.     FMTC is a Massachusetts corporation with its headquarters in Boston.  FMTC is a trust company and manages assets for approximately 550 institutional clients worldwide with $113 billion in assets under management as of March 2006. The firm provides its services to corporate and public retirement funds, endowments, foundations, and other institutions worldwide.

26.     FIIOC is a Massachusetts corporation with its headquarters in Boston. Upon information and belief, FIIOC provides various administrative and record keeping services to the Plaintiff Plans.

IV.     **LAW**

   A.     **ERISA-Generally**

27.     ERISA, codified at 29 U.S.C. § 1001, *et seq*, was enacted, in part, to ensure "the soundness and stability of plans with respect to adequate funds to pay promised benefits." ERISA § 2(a), 29 U.S.C. § 1001(a).

28.     A 401(k) plan is a defined contribution plan, which is subject to ERISA.  ERISA § 3(34), 29 U.S.C. § 1002(34).

29.     Under ERISA, a "defined contribution plan" is "a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." ERISA § 3(34), 29 U.S.C. § 1002(34).

30.     All of the Plaintiff Plans are defined contribution plans.

31.     Pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), a person (or entity) is a fiduciary with respect to a retirement plan to the extent that he/she (or it):

> (i)     exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets;
>
> (ii)    renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of such plan, or has any authority or responsibility to do so; or

(iii)   has   any   discretionary   authority   or   discretionary responsibility in the administration of such plan.

32.     When managing the assets of a retirement plan subject to ERISA, a fiduciary must discharge its duties with respect to such plan solely in the interest of the plan's participants and beneficiaries and for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries and (ii) defraying reasonable expenses of administering the plan. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

33.     When managing the assets of a retirement plan subject to ERISA, a fiduciary must act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

34.     Pursuant to ERISA § 409, 29 U.S.C. § 1109, any fiduciary that violates ERISA § 404, 29 U.S.C. § 1104, with respect to an ERISA plan, is liable to "make good" for:

> any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

35.     Pursuant to ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), a fiduciary with respect to a plan shall be held liable for a breach of fiduciary duty of another fiduciary with respect to the same plan if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act is a breach.

36.     Pursuant to  ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), a fiduciary with respect to a plan shall be held liable for a breach of fiduciary duty of another fiduciary with respect to the same plan if the fiduciary, by his failure to comply with ERISA § 404(a)(1), 29 U.S.C. §

1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, has enabled such other fiduciary to commit a breach.

37.     Pursuant to ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), a fiduciary with respect to a plan shall be held liable for a breach of fiduciary duty of another fiduciary with respect to the same plan if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

38.     ERISA §§ 406(a)(1)(C) and (D), 29 U.S.C. § 1106(a)(1)(C) and (D), provide that:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect-

> *       *       *       *

> (C)     furnishing of goods, services, or facilities between the plan and a party in interest;

> (D)     transfer to or use by or for the benefit of a party in interest, of any assets of the plan, …

39.     Pursuant to ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), the term "party in interest" means, as to an employee benefit plan-

> *       *       *       *

> (A)     any fiduciary including but not limited to, any administrator, officer, trustee or custodian;

> (B)     a person providing services to such plan;

**B.      ERISA-QDRO/DRO Law**

40.     Generally, a defined contribution plan (i.e., 401(k)s) may only pay benefits to the plan's participants.

41.     Participants of a 401(k) plan, absent an exception, may not assign or alienate the assets in their 401(k) accounts. ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1).

42.     ERISA § 206(d)(3)(A), 29 U.S.C. § 206(d)(3)(A), contains one such exception and it permits defined contribution plans to honor the terms of a DRO, if it satisfies certain requirements making it qualified (i.e., a QDRO).

43.     Generally, a DRO is a judgment or order issued by a court, pursuant to state domestic relations law, in connection with divorce proceedings, and provides for the payment of alimony, child support or the division of marital retirement assets.

44.     Under ERISA, the non-participant that receives a portion of the participant's 401(k) account pursuant to the terms of a DRO, that is determined to be qualified, is referred to as the "Alternate Payee."  The only persons that can qualify as Alternate Payees are: the plan participant's: (a) spouse, (b) former spouse, (c) child, or (d) other dependent.   ERISA § 206(d)(3)(K), 29 U.S.C. § 1056(d)(3)(K).

45.     Therefore, for purposes of this Complaint, the person whose retirement plan assets are being divided or distributed pursuant to the QDRO is referred to as the "Participant" (because he or she is the participant in the retirement plan as defined under ERISA § 3(7), 29 U.S.C. § 1002(7).   The person to whom the Participant's retirement plan assets are being transferred (i.e., the Participant's former spouse) is referred to as the "Alternate Payee."

46.     Pursuant to ERISA § 206(d)(3)(C), 29 U.S.C. § 1056(d)(3)(C), for a DRO to be qualified (i.e., to be a QDRO), it must contain the following: (1) the names and addresses of the Participant and each Alternate Payee; (2) the amount or percentage of the Participant's benefit to be paid to the Alternate Payee; (3) the number of payments or period to which the order applies; and (4) the name of the plan.

47.     The above four categories of information are the only requirements under ERISA that a DRO must contain in order to be qualified.

48.     ERISA § 206(d)(3)(D), 29 U.S.C. § 1056(d)(3)(D), sets forth the provisions that a DRO may not contain.  A DRO will fail to qualify as a QDRO if it: (1) provides any type or form of benefit, or any option, not otherwise provided under the applicable plan; (2) provides for increased benefits (determined on the basis of actuarial value) to be paid to the Alternate Payee which are greater than those to which the participant is entitled under the plan; and (3) pays benefits to the Alternate Payee which are required to be paid to another Alternate Payee under another DRO previously determined to be a QDRO.  ERISA § 206(d)(3)(D), 29 U.S.C. § 1056(d)(3)(D).

49.     In determining whether to qualify a DRO, a plan administrator is only required to evaluate the DRO to identify whether it meets the above legal requirements.

50.     Pursuant to ERISA, upon qualification of a DRO, the Alternate Payee is treated as a beneficiary under the applicable defined contribution plan.  ERISA § 206(d)(3)(J), 29 U.S.C. § 1056(d)(3)(J).

51.     Thus, the DRO (Domestic Relations Order) portion is the responsibility of the applicable state court issuing the order.  The Q (Qualified) portion is the responsibility of the retirement plan's QDRO administrator.

52.     If the QDRO administrator determines that the DRO cannot be qualified, as required under ERISA, the administrator must provide the following information to the Participant and the Alternate Payee: (1) the reasons why the DRO is not a QDRO; (2) references to the plan provisions on which the determination is based; (3) an explanation of any time limits that apply; and (4) a description of any additional information or modifications necessary for the DRO to be a QDRO and an explanation as to why it is necessary.

53.     With respect to the fees that may be charged by the QDRO administrator, according to the DOL, it may only charge the "reasonable expenses" incurred in connection with the QDRO determination. DOL QDRO Pub. § 2-6.  These expenses are charged to the individual account of the specific Participant and also may be charged to/shared by the account established under the plan for the Alternate Payee.

C.     **ERISA-Relief Provisions**

54.     Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1332(a)(2), a participant or beneficiary of a defined contribution plan has standing to bring a complaint for any relief under ERISA § 409, 29 U.S.C. § 1109.

55.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), a participant or beneficiary has standing to bring a claim to: (A) enjoin any practice that violates ERISA or (B) obtain other equitable relief to: (i) to redress a violation of ERISA or (ii) to enforce any provision of ERISA.

56.     Pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), a court, in its discretion, may allow for payment of reasonable attorneys' fees and costs associated with an action arising under ERISA.

57.     Plaintiffs bring this action pursuant to ERISA §§ 409(a) and 502(a)(2), (3) and (g), 29 U.S.C. §§ 1109(a), and 1132(a)(2), (3) and (g) for, among other relief, the following:

A.     A declaratory judgment holding that the acts of FMTC and/or FIIOC described herein violate ERISA;

B.     A permanent injunction against FMTC and/or FIIOC prohibiting the practices described herein;

C.     Disgorgement and/or restitution of all excessive fees charged to the Plaintiff Plans and received by FMTC and/or FIIOC;

D.     Payment of monetary damages;

E.     Attorneys' fees, costs and other recoverable expenses of litigation; and

F.     Such other and additional legal or equitable relief that the Court deems appropriate and just under all of the circumstances.

## V.     FMTC's AND/OR FIIOC's MISCONDUCT AS THE PLAINTIFF PLANS' QDRO SERVICE PROVIDER

### A.     FMTC's and/or FIIOC's QDRO Business

58.     FMTC and/or FIIOC serve as the QDRO administrator to the Plaintiff Plans.  In that capacity, Defendants perform: (a) DRO review, (b) DRO qualification and (c) QDRO administration services for these plans, and receive fees for such services from such plans.

59.     FMTC and/or FIIOC have stepped into the role of plan administrator while processing QDROs for the Plaintiff Plans and are therefore fiduciaries under ERISA.

60.     FMTC and/or FIIOC, as fiduciaries in their capacity as the Plaintiff Plans' QDRO administrator, have breached their fiduciary duties under ERISA by charging Plaintiffs $1,200 for its QDRO services.

61.     As a result of FMTC's and/or FIIOC's ERISA violations, the Plaintiffs have been denied the full value of their retirement benefits.

### B.     As the Plaintiff Plans' QDRO Administrator, Defendants FMTC and FIIOC are Fiduciaries to the Plaintiff Plans

62.     A person (or entity) is a fiduciary to the extent he: "(i) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of disposition of its assets,…or (iii) has any discretionary

authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

63.    To fulfill ERISA's express remedial purpose, the term fiduciary is to be construed broadly.

64.    "[F]iduciary status under ERISA is not an all-or-nothing concept, and a court must ask whether a person is a fiduciary with respect to the particular activity at issue." Cotton v. Massachusetts Mut. Life Ins. Co., 402 F.3d 1267, 1277 (11th Cir. 2005) (internal quotations omitted).

65.    For several reasons FMTC and FIIOC, as the Plaintiff Plans' QDRO administrator, are/were fiduciaries to the Plaintiff Plans pursuant to ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii). Any of the activities described below are sufficient in themselves to confer fiduciary status upon Defendants with respect to the Plaintiff Plans.

66.    Defendants are fiduciaries to the Plaintiff Plans pursuant to ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), because they make the determination, for the Plaintiff Plans, as to whether a DRO is a QDRO.

67.    Defendants are fiduciaries to the Plaintiff Plans pursuant to ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), because according to Defendants they serve as the arbiter if the "parties [are] disputing a domestic relations order qualified by Fidelity...." According to Defendants, "For purposes of ...[its] Guidelines 'dispute' shall mean that one or more of the Parties are questioning the terms and/or interpretation of a Qualified Domestic Relations Order or the amount awarded to the Alternate Payee pursuant to the Qualified Domestic Relations Order."

68.     Defendants are fiduciaries to the Plaintiff Plans pursuant to ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), because upon notice of a "dispute," Defendants, unilaterally, place "temporary disbursement restrictions on both the Participant's and the Alternate Payee's account," while they resolve the dispute.

69.     Defendants are fiduciaries to the Plaintiff Plans pursuant to ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), because they have unilateral discretion to determine and change the amount of fees they charge the Plaintiffs for their QDRO services; as a result, of this discretion, Defendants can effect the amount of the Plaintiffs' retirement benefits.

70.     Defendants are fiduciaries to the Plaintiff Plans pursuant to ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), because while Defendants are making their determination as to whether, in their opinion, a DRO is a QDRO, they prohibit "distributions to the Participant or any other person of any amounts that [in its opinion][1] would be payable to the Alternate Payee if the domestic relations order were determined to be a QDRO."

71.     Defendants are fiduciaries to the Plaintiff Plans pursuant to ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), because if the DRO is silent regarding whether the Alternate Payee is entitled to any earnings that accrue in the Participant's account during the time period in which Defendants are deciding whether the DRO is qualified, Defendants, unilaterally decide that they will not provide any such earnings to the Alternate Payee, which results in the Alternate Payee receiving a smaller amount of benefits.

---

[1] Since Defendants make the decision as to whether the DRO is a QDRO, during the time period they are reviewing the DRO to see if it is qualified, they also decide, in their discretion, how much of the Participant's account to segregate and separately account for as being attributable to the Alternate Payee.

72.     Defendants are fiduciaries to the Plaintiff Plans pursuant to ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), because if, at the time of submission of the DRO, the Participant has a loan outstanding from his or her 401(k) account, and the DRO is silent on the issue as to whether the account, for division purposes, should be valued as including those outstanding loan proceeds, Defendants unilaterally decide not to include the outstanding loan proceeds in its valuation of the Participant's account,  which results in the Alternate Payee receiving a lesser amount of benefits.

73.     Defendants are fiduciaries to the Plaintiff Plans pursuant to ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), because they require that the "Alternate Payee's award must be transferred proportionately from all standard investment options in the Participant's Plan account(s) as of the date of account segregation.   Orders that provide otherwise will be treated as **non-qualified."** (emphasis in the original).

### C.     As Trustee to the Plaintiff Plans, FMTC is a Fiduciary to the Plaintiff Plans.

74.     As trustee to the Plaintiff Plans, FMTC is a fiduciary pursuant to ERISA §§ 3(21)(A)(i) and (ii), 29 U.S.C. §§ 1002 (21)(A)(i) and (iii), to the Plaintiff Plans.

### D.     Defendants Breached their Fiduciary Duties to the Plaintiff Plans

75.     Defendants are bound by ERISA's fiduciary duties, which have been characterized as the "highest known to law."

76.     As a fiduciary to the Plaintiff Plans, Defendants were required by ERISA § 404(a)(1)(A)(i) and (ii), 29 U.S.C. § 1104(a)(1)(A)(i) and (ii), to discharge their duties with respect to the Plaintiff Plans solely in the interests of the Plaintiffs and for the exclusive purpose of: (i) providing benefits to the Plaintiff Participants and (ii) defraying reasonable expenses of administering the Plaintiff Plans.

77.     As a fiduciary to the Plaintiff Plans, Defendants were was also required by ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), to discharge their duties with respect to the Plaintiff Plans solely in the interests of the Plaintiffs with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

78.     FMTC and/or FIIOC are the QDRO administrators for the Plaintiff Plans and thus have assumed responsibility for determining if a DRO qualifies as a QDRO.

79.     FMTC and/or FIIOC charged the Plaintiffs $1,200 for QDRO review services.

80.     By charging a $1,200 fee for its QDRO review services, FMTC and/or FIIOC breached their fiduciary duties pursuant to ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), because this fee was unreasonable and/or excessive.  This unreasonable and excessive fee denied the Plaintiffs the full value of their retirement benefits.

81.     FMTC and/or FIIOC charge this $1,200 fee to confirm that the submitted DRO contains the following information: (1) the names and addresses of the Participant and each Alternate Payee; (2) the amount or percentage of the Participant's benefit to be paid to the Alternate Payee; (3) the name of the Plaintiff Plan; and (4) the number of payments or time periods to which the QDRO applies; and to also confirm that the QDRO: (1) does not provide any type of benefit not otherwise provided under the Plaintiff Plan; (2) does not require the Plaintiff Plan to pay increased benefits (determined on the basis of actuarial value); and (3) does not provide for payment of a benefit that has already been assigned to another individual.

82.     Given the amount of services FMTC and/or FIIOC render as the Plaintiff Plans' QDRO administrators, their $1,200 fee is unreasonable and excessive and bears no relation to the

services that FMTC and/or FIIOC actually rendered, or the expenses it actually, or should have, incurred.

83.     FMTC's and/or FIIOC's $1,200 **review** and qualification fee is substantially greater than the fees that the Federal Government recommends that a service provider should charge to **draft** a DRO for a more complicated defined benefit (i.e., pension) plan.

84.     "The Pension Benefit Guaranty Corporation ("PBGC") is a federal agency that insures the benefits of about 44 million men and women in more than 30,000 private-sector defined benefit pension plans." PBGC Qualified Domestic Relations Order.   Dividing a retirement benefit attributable to a participant in a defined contribution plan is significantly less complicated than dividing a benefit attributable to a participant in a defined benefit plan. According to the PBGC, "the average burden of preparing a [defined benefit] QDRO...will be...$438 to $900 in professional fees." Id.  Thus, the amount that the Federal Government has determined to be the appropriate fee for an attorney to charge for **drafting** a DRO for a defined benefit plan is significantly less than the fee FMTC and/or FIIOC charge for **reviewing and qualifying** a previously drafted DRO for a less complicated defined contribution plan.

85.     A reasonable fee for drafting a DRO for a defined contribution plan (which Defendants admit is a "time-consuming and labor-intensive process") is $350 to $500.

86.     In fact, in Plaintiff Danza's case, All Pro QDRO, LLC, charged $475 to draft his DRO.

87.     Thus, to merely review and qualify a DRO, FMTC and/or FIIOC are charging the Plaintiffs $725 to $850 more than what it costs to draft the DRO.

88.     Others charge no money or significantly less than Defendants to review and qualify a DRO.

89.     By the time FMTC and/or FIIOC receive the DRO, the bulk of services are already performed by the others that actually drafted the DRO, which includes, but is not limited to, compiling the following information: (1) the dates that the Participant and the Alternate Payee were both married and legally separated or divorced; (2) the legal name of the Plaintiff Plan to which the QDRO applies; (3) the names, last known mailing addresses, social security numbers and dates of birth of the Participant and the Alternate Payee; (4) the Alternate Payee's relationship to the Participant; and (5) whether the QDRO relates to marital property rights, alimony payments and/or child support.   FMTC and/or FIIOC charge an unreasonable and excessive fee of $1,200 to merely review and qualify this information.

90.     As an example of the excessiveness of FMTC's and/or FIIOC's fee, on information and belief, prior to 2006, Defendants did not charge any fees for its QDRO review services.

91.     The decision to not charge a review fee prior to 2006 further demonstrates that FMTC's and/or FIIOC's current $1,200 fee is unreasonable and excessive.

92.     As another example of the excessiveness and unreasonableness of FMTC's and/or FIIOC's $1,200 fee, in the past, have charged $300 for QDRO services.

93.     In one instance, FMTC and/or FIIOC charged a fee of $300 for its QDRO services, even though the DRO was not approved after FMTC's and/or FIIOC's initial review and additional information was required in order for the DRO to be deemed qualified.   In that particular case, FMTC and/or FIIOC had initially indicated it was going to assess its normal charge of $1,200 for its QDRO services. Subsequently, however, FMTC and/or FIIOC, unilaterally decided to assess a lower fee of $300, which is further evidence that the $1,200 fee is

unreasonable and excessive, and demonstrates that Defendants have discretionary control over the amount they charge to review a QDRO.

94.     By assessing a $1,200 fee upon the Plaintiffs, FMTC and/or FIIOC have violated the DOL's mandate that a QDRO administrator only charge a fee that is equal to the reasonable expenses it incurs in connection with the QDRO determination.

95.     FMTC and/or FIIOC knew or should have known that, by charging unreasonable and excessive fees to the Plaintiffs for QDRO services, it denied them the full value of their retirement benefits.

96.     The $1,200 QDRO review fee is substantially disproportionate to the services FMTC and/or FIIOC actually render for such fee and furthermore, such fee is significantly greater than the expenses Defendants incur, or should incur, in determining if a DRO is a QDRO. Thus, by charging this $1,200 fee for each DRO it reviewed, FMTC and/or FIIOC breached their fiduciary duties pursuant to ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B).

**E.     Defendants are Liable to Plaintiffs as Co-Fiduciaries**

**1.     FMTC's and FIIOC's Liability For Employer Fiduciary Breaches**

97.     As fiduciaries, Defendants have, at all times, owed Plaintiffs a duty to ensure that other fiduciaries did not breach their duties. ERISA § 405(a), 29 U.S.C. § 1105(a).

98.     Defendants have, at all times, owed Plaintiffs a duty to ensure that reasonable steps were taken to remedy breaches of fiduciary duties of other fiduciaries of which they were and/or should have been aware of. ERISA § 405(a), 29 U.S.C. § 1105(a).

99.    At all relevant times, Defendants were fiduciaries to the Plaintiff Plans pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in their capacity as the Plaintiffs' QDRO administrator.

100.    For the reasons set forth in paragraphs 80 to 94, a fiduciary that allows a plan to be charged a $1200 QDRO review, breaches its fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B).

101.    A&P is the plan sponsor, and fiduciary, to the Plaintiff Plan in which Plaintiff Danza is a participant.

102.    Thus, for the reasons set forth in paragraphs 80 to 94, which explain why charging a $1,200 QDRO review fee constitutes a breach of fiduciary duty under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), A & P breached its fiduciary duties when it permitted FMTC and FIIOC to charge the Plaintiff Plan in which Plaintiff Danza is a participant, and Plaintiff Danza, a $1200 QDRO review fee.

103.    Similarly, like A&P, the plan sponsors/other fiduciaries affiliated with all of the other Plaintiff Plans, for the reasons set forth in paragraphs 80 to 94, which explain why the charging of a $1200 QDRO review fee constitutes a breach of fiduciary duty under ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), breached their fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), by permitting FMTC and/or FIIOC to charge such plans a $1,200 QDRO review fee.

104.    The term "Employer Fiduciaries" hereinafter collectively refers to the employer affiliated fiduciary to the A&P Plan, as well as the fiduciaries that are affiliated with the employers that sponsor the other Plaintiff Plans (i.e., not FMTC or FIIOC), which permitted FMTC and FIIOC to charge the Plaintiff Plans a $1,200 QDRO review fee.

105.    All of the Employer Fiduciaries are fiduciaries to the Plaintiff Plans under ERISA § 3(21)(A)(i) and (iii), 29 U.S.C. § 1002(3)(21)(A)(i) and (iii).

106.    FMTC and FIIOC knew that the Employer Fiduciaries were fiduciaries under ERISA § 3(21)(A), 29 U.S.C. § 1002(3)(21)(A), to the Plaintiff Plans.

107.    FMTC and FIIOC knew the Employer Fiduciaries breached their fiduciary duties in allowing the Plaintiff Plans to be charged a $1,200 QDRO review fee because, for such a large fee, their QDRO review services were limited to confirming that the submitted DRO contains the following information: (1) the names and addresses of the Participant and each Alternate Payee; (2) the amount or percentage of the Participant's benefit to be paid to the Alternate Payee; (3) the name of the Plaintiff Plan; and (4) the number of payments or time periods to which the QDRO applies; and to also confirm that the QDRO: (1) does not provide any type of benefit not otherwise provided under the Plaintiff Plan; (2) does not require the Plaintiff Plan to pay increased benefits (determined on the basis of actuarial value); and (3) does not provide for payment of a benefit that has already been assigned to another individual.

108.    FMTC and FIIOC knew the Employer Fiduciaries breached their fiduciary duties in allowing the Plaintiff Plans to be charged a $,1200 QDRO review fee because they charge a $300 fee for certain QDRO services that are not materially different from the services they perform when they charge their $1200 QDRO fee.

109.    FMTC and FIIOC knew the Employer Fiduciaries breached their fiduciary duties in allowing the Plaintiff Plans to be charged a $1,200 QDRO review fee because, on information and belief, prior to 2006 they performed services that are not materially different from the services they perform for the $1200 QDRO review fee for no fee.

110.    FMTC and FIIOC knew the Employer Fiduciaries breached their fiduciary duties in allowing the Plaintiff Plans to be charged a $1,200 QDRO review fee because, on information and belief, these Defendants have actual knowledge of the costs to provide these services, and on information and belief, given the nature of the QDRO review services, such costs are minimal.

111.    FMTC and FIIOC knew the Employer Fiduciaries breached their fiduciary duties in allowing the Plaintiff Plans to be charged a $1,200 QDRO review fee because, on information and belief, these Defendants have actual knowledge of the profits they made on QDRO reviews by charging a $1,200 QDRO review fee, and on information and belief, given the nature of the services, such costs were minimal and such profits were very large.

112.    FIIOC, which acted as a QDRO administrator/fiduciary to the Plaintiff Plans and charged Plaintiffs a QDRO review fee, knew that all of the Employer Fiduciaries, breached their fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), to the Plaintiff Plans, in agreeing to contracts with FMTC for QDRO review services which resulted in a $1200 QDRO review fee.

113.    FIIOC, which acted as a QDRO administrator/fiduciary to the Plaintiff Plans, and charged the Plaintiff Plans a $1,200 QDRO review fee, knew that its receipt of such fee was a consequence of the Employer Fiduciaries breach of fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B).

114.    FMTC, which acted as a QDRO administrator/fiduciary to the Plaintiff Plans and charged Plaintiffs a QDRO review fee, knew that all of the Employer Fiduciaries, breached their fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), to the Plaintiff Plans, in agreeing to contracts with FMTC for QDRO review services which resulted in a $1,200 QDRO review fee.

115. FMTC, which acted as a QDRO administrator/fiduciary to the Plaintiff Plans, and charged the Plaintiff Plans a $1200 QDRO review fee, knew that its receipt of such fee was a consequence of the Employer Fiduciaries breach of fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B).

116. Neither Defendant took any actions to stop these breaches.

117. FMTC, as the Plaintiff Plans' QDRO administrator, knowingly participated in the Employer Fiduciaries' breaches of fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), and thus is liable for such breaches under ERISA § 405(a)(1), 29 U.S.C. §1105(a)(1).

118. As a consequence of FMTC's failure to comply with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), in its capacity as the Plaintiff Plans' QDRO administrator, it enabled the Employer Fiduciaries to commit breaches of ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), and thus is liable for such breaches under ERISA § 405(a)(2), 29 U.S.C. §1105(a)(2).

119. FMTC, as the Plaintiff Plans QDRO administrator, had knowledge of the Employer Fiduciaries' breaches of fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(B), and did not take any efforts to remedy such breaches, and thus is liable for such breaches under ERISA § 405(a)(3), 29 U.S.C. §1105(a)(3).

120. FIIOC, as the Plaintiff Plans' QDRO administrator, knowingly participated in the Employer Fiduciaries' breaches of fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), and thus is liable for such breaches under ERISA § 405(a)(1), 29 U.S.C. §1105(a)(1).

121. As a consequence of FIIOC's failure to comply with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), in its capacity as the Plaintiff Plans' QDRO administrator, it enabled the

Employer Fiduciaries to commit breaches of ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), and thus is liable for such breaches under ERISA § 405(a)(2), 29 U.S.C. §1105(a)(2).

122.    FIIOC, as the Plaintiff Plans QDRO administrator, had knowledge of the Employer Fiduciaries breaches of fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(B), and did not take any efforts to remedy such breaches, and thus is liable for such breaches under ERISA § 405(a)(3), 29 U.S.C. §1105(a)(3).

**2.    FMTC's Liability For FIIOC's Fiduciary Breaches**

123.    FMTC served as the trustee to the Plaintiff Plans, and thus was a fiduciary to the Plaintiff Plans under ERISA §§ 3(21)(A)(i) and (ii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), to the Plaintiff Plans.

124.    FIIOC served as the QDRO administrators to the Plaintiff Plans, and charged the $1200 QDRO review fee.

125.    For the reasons set forth in paragraphs 107 to 111, FMTC knew the $1200 QDRO review fee was excessive.

126.    FMTC, as the Plaintiff Plans trustee, had knowledge of the FIIOC's breaches of fiduciary duties under ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), and did not take any efforts to remedy such breaches, and thus is liable for such breaches under ERISA § 405(a)(3), 29 U.S.C. §1105(a)(3).

**F.  FMTC and FIIOC Received Unreasonable Compensation Paid From Plan Assets for QDRO Administration Services, which Resulted in Prohibited Transactions Pursuant to ERISA §§ 406 (a)(1)(C) and (D), 29 U.S.C. §§ 1106 (a)(1)(C) and (D) and ERISA §§ 406 (b)(1) and (3), 29 U.S.C. §§ 1106 (b)(1) and (3)**

**1.  ERISA §§ 406(a) Prohibited Transactions**

127.    Pursuant to ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), a fiduciary with respect to a plan shall not engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect furnishing of services between the plan and a party in interest.

128.    Pursuant to ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), a fiduciary with respect to a plan shall not engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect transfer to a party interest, of any assets of the plan.

129.    Pursuant to ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), the term "party in interest" means, as to an employee benefit plan, a person providing services to such plan.

130.    The Employer Fiduciaries act as fiduciaries to the Plaintiff Plans pursuant to ERISA § 3(21)(a)(i), 29 U.S.C. §§ 1002(21)(a)(i) and (iii).

131.    FMTC acts as a fiduciary to the Plan pursuant to ERISA § 3(21)(a)(i), 29 U.S.C. § 1002(21)(a)(i) and (iii).

132.    FMTC is also a party in interest to the Plaintiff Plans, as a fiduciary, and as a provider of services, including QDRO administration services, under ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B).

133.    FIIOC is a party in interest to the Plaintiff Plans, as a fiduciary, and as a provider of services, including QDRO administration services, under ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B).

134.    FMTC and FIIOC provided QDRO administration services to the Plaintiff Plans in exchange for fees from the Plans.

135.    The Employer Fiduciaries caused the Plaintiff Plans to engage in transactions with party in interest, FMTC, for the provision of services and through the transfer of Plaintiff Plan assets to FMTC, as set forth under ERISA §§ 406(a)(1)(C) and (D), 29 U.S.C. §§1106(a)(1)(C) and (D).

136.    The Employer Fiduciaries and/or FMTC caused the Plaintiff Plans to engage in transactions with FIIOC for the provision of services and through the transfer of Plaintiff Plan assets to FIIOC, as set forth under ERISA §§ 406(a)(1)(C) and (D), 29 U.S.C. §§1106(a)(1)(C) and (D).

137.    The fiduciaries either knew, or should have known, that assets of the Plaintiff Plans were transferred to FMTC or FIIOC, parties in interest.

138.    The fiduciaries either knew, or should have known, that they hired parties in interest, either FMTC or FIIOC, to furnish QDRO administration services to the Plaintiff Plans.

139.    These transactions are prohibited because the compensation for QDRO administration services the Plaintiff Plans paid from plan assets, and which parties in interest FMTC and FIIOC collected for such services, was unreasonable and excessive in light of the actual services rendered.

140.    ERISA § 408(b), 29 U.S.C. § 1108(b), does not except the transactions covered under ERISA § 406(a)(1)(C) and (D), 29 U.S.C. § 1106(a)(1)(C) and (D), because Plaintiff Plan assets were used to pay compensation to FMTC in an amount, which, in light of the QDRO administration services rendered, was not reasonable.

141.   These transactions do not fall within any exemption identified under ERISA § 408(b), 29 U.S.C. § 1108(b), and are not protected by any of the regulatory exemptions issued by the DOL pursuant to ERISA § 408(a), 29 U.S.C. § 1108(a).

142.   Under ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2), "[c]ontracting or making reasonable arrangements with a party in interest for ... legal, accounting or other services necessary for establishment or operation of the plan," is only exempts a transaction prohibited by ERISA §§ 406(a)(1)(C) and (D), 29 U.S.C. §§ 1106(a)(1)(C) and (D) "if no more than reasonable compensation is paid therefor."

143.   Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks to enjoin FMTC and FIIOC from engaging in such prohibited transactions, and seeks to remedy the depletion of Plaintiff Plan assets caused by these prohibited transaction violations through an order requiring FMTC and FIIOC to reimburse and restore to the Plaintiff Plans all property of the Plaintiff Plans and Participants, and disgorge all amounts by which it profited from the sale of such property of the Plaintiff Plans and Participants, in excess of the compensation that was reasonable for QDRO administration services, which FMTC and FIIOC received, and the benefit of which equity does not permit FMTC or FIIOC to retain.

### 2.   ERISA § 406(b) Prohibited Transactions

144.   ERISA § 406(b), 29 U.S.C. § 1106(b), provides that "[a] fiduciary with respect to a plan shall not –

(1)   deal with the assets of the plan in his own interest or for his own account, ...

(3)   receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

145.    However, pursuant to ERISA § 408(c), 29 U.S.C. § 1108(c), a fiduciary with respect to the plan is not prohibited, as otherwise established under ERISA § 406(b), 29 U.S.C. § 1106(b), from:

> (2)    receiving any reasonable compensation for services rendered, or for the reimbursement of expenses properly and actually incurred, in the performance of his duties with the plan; ...

146.    FMTC and FIIOC are fiduciaries with respect to the plan and: a) dealt with the assets of the plan in their own interest; and b) received consideration for their own personal account from the Plaintiff Plans, or a party dealing on behalf of the Plaintiff Plans, in connection with the performance of QDRO administration services, for which the consideration/compensation received was excessive and unreasonable, and thus engaged in transactions prohibited by ERISA § 406(b)(1) and (3), 29 U.S.C. § 1106(b)(1) and (3).

147.    Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), FMTC and FIIOC are liable to the Plaintiff Plans and Plaintiff Participants for the losses they suffered on account of these prohibited transactions.

148.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks to enjoin FMTC and FIIOC from engaging in such prohibited transactions, and seeks to remedy the depletion of Plaintiff Plan assets caused by this prohibited transaction violation through an order requiring FMTC and FIIOC to reimburse and restore to the Plaintiff Plans and Participants all property of the Plaintiff Plans and Participants, and disgorge all amounts by which FMTC and FIIOC profited from the sale and transfer of such property to FMTC and FIIOC, which property belonged to the Plaintiff Plans and Participants, was in excess of the compensation that was

reasonable for the QDRO administration services rendered, and which equity does not permit FMTC and FIIOC to retain.

## VI.   CLASS ACTION ALLEGATIONS

149.   Plaintiff Danza brings this action as a class action, individually, and on behalf of the Plaintiff Plans (which are all ERISA-covered employee benefit plans), which (i) used Defendants as their QDRO administrators; (ii) Defendants approved the DRO as a QDRO on its initial review; and (iii) Participants were charged by Defendants unreasonable and excessive fees for such services by Defendants, and on behalf of the Participants of all such ERISA-covered employee benefit plans (i.e., these entities and persons are the "Class").

150.   The Class period for the Class begins on the earliest date on which such claims would be timely.

151.   Excluded from the Class is the Defendant, any entity in which the Defendants have a controlling interest, and the Defendants' officers, directors, affiliates, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice or judicial officer presiding over this matter and the members of their judicial staff.

152.   The members of the proposed Class are so numerous that joinder of all members would be impracticable as required under Fed. R. Civ. P. 23(a)(1). The total number of Class members is believed to be at least 1,000 individuals.

153.   There are questions of law and fact common to the Class as required under Fed. R. Civ. P. 23(a)(2), among them the following:

      A.   Whether Defendants are fiduciaries to the Plaintiff Plans under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A);

B.      Whether Defendants breached their fiduciary duties pursuant to ERISA § 404(a)(1)(A)(i), 29 U.S.C. § 1104(a)(1)(A)(i), by charging excessive and unreasonable fees for its QDRO services;

C.      Whether Defendants breached their fiduciary duties pursuant to ERISA § 404(a)(1)(A)(ii), 29 U.S.C. § 1104(a)(1)(A)(ii), by charging excessive and unreasonable fees for their QDRO services; and

D.      Whether Defendants breached their fiduciary duties pursuant to ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), by charging excessive and unreasonable fees for their QDRO services.

E.      Whether Defendants are liable to Plaintiffs as co-fiduciaries under ERISA § 405(a), 29 U.S.C. § 1105(a).

F.      Whether Defendant engaged in prohibited transactions, pursuant to ERISA §§ 406 (a)(1)(C) and (D), 29 U.S.C. §§ 1106 (a)(1)(C) and (D), and §§ 406(b)(1) and (3), 29 U.S.C. §§ 1106(b)(1) and (3).

154.    The claims and defenses of the representative party are typical of the claims and defenses of the Class. The representative party has no interests that are antagonistic to the claims of the Class, and understands that this matter cannot be settled without the Court's approval.

155.    The representative party will fairly and adequately protect the interests of the Class, and is committed to a vigorous prosecution of this case.

156.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the Defendants.

157.   The party opposing the Class has acted on grounds generally applicable to the Class thereby making appropriate final injunctive relief or corresponding declaratory relief.

158.   The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

159.   Defendants are obligated to treat all Class members similarly under ERISA, which imposes uniform standards of conduct on fiduciaries.  Individual proceedings, therefore, would pose the risk of inconsistent adjudications.

160.   Since the damages suffered by each Class member may be relatively small, the expense and burden of individual litigation makes it impractical for class members to separately seek redress.

161.   The Class suffered, and will continue to suffer, harm as a result of Defendants' conduct.

162.   A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of the Class is impractical.

163.   Even if individual Class members had the resources to pursue their own litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.

164.   Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct.

165.   The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class members' claims in a single forum.

166.    Conducting this action as a class action conserves the resources of the parties and of the judicial system, and protects the rights of the Class members. For many, if not most Class members, a class action is the only feasible mechanism that allows them an opportunity for legal redress and justice.

167.    This Class may be certified under Fed. R. Civ. P. 23(b).

A.    **Rule 23(b)(1).** As an ERISA breach of fiduciary duties action, this action is a classic 23(b)(1) class action. Prosecution of separate actions by individual members would create the risk of (A) inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the Defendant opposing the Class, or (B) adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

B.    **Rule 23(b)(2).** This action is suitable as a class action under 23(b)(2) because the Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final injunctive, declaratory or other appropriate equitable relief with respect to the Class.

C.    **Rule 23(b)(3).** This action is suitable to proceed as a class action under 23(b)(3) because questions of law and fact common to the members of the Class predominate over individual questions, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiffs are aware of no difficulties likely to be encountered in the management of this matter as a class action.

## COUNT I

**BREACH OF FIDUCIARY DUTIES BY DEFENDANTS PURUSANT TO ERISA §§ 404(a)(1)(A)(i) AND (ii) AND (B), 29 U.S.C. §§ 1104(a)(1)(A)(i) AND (ii) AND B, FOR CHARGING THE PLAINTIFF PLANS AND THE PLAINTIFF PARTICIPANTS UNREASONABLE AND EXCESSIVE FEES FOR THEIR QDRO SERVICES**

168.    Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

169.    At all relevant times, Defendants were fiduciaries to the Plaintiff Plans pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in their capacity as the Plaintiffs' QDRO administrators.

170.    Pursuant to ERISA § 404(a)(1)(A)(i), 29 U.S.C. § 1104(a)(1)(A)(i), a fiduciary must discharge its duties with respect to the plans for which it serves as a fiduciary solely in the interest of the participants and beneficiaries of such plans and for the exclusive purpose of providing benefits to the plans' participants and beneficiaries.

171.    Pursuant to ERISA § 404(a)(1)(A)(ii), 29 U.S.C. § 1104(a)(1)(A)(ii), a fiduciary must discharge its duties with respect to the plans for which it serves as a fiduciary solely in the interest of the participants and beneficiaries of such plans and for the exclusive purpose of defraying reasonable expenses of administering such plans.

172.    Pursuant to ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), a fiduciary must discharge its duties with respect to the plans for which it serves as a fiduciary solely in the interest of the participants and beneficiaries of such plans and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims.

173.    Defendants charged and continue to charge the class unreasonable and excessive fees for their QDRO services.

174.    Thus, given the amount of services Defendants render in their QDRO reviews, their fees are unreasonable and excessive given that it is substantially disproportionate to the: (1) services it renders, (2) the amount of time Defendant(s) spends, or should spend, in rendering such services; and (3) the expenses Defendant(s) incurs, or should incur, in rendering such services.

175.    Defendants, by charging the excessive and unreasonable portion of its QDRO review fee, breached their fiduciary duties pursuant to ERISA § 404(a)(1)(A)(i), 29 U.S.C. § 1104(a)(1)(A)(i), because the excessive and unreasonable portion of this fee did not result in the provision of any additional services benefitting the Plaintiff Plans or the Plaintiff Participants. Rather, the excessive portion of the QDRO review fees only injured Plaintiffs because it denied them of the full value of their retirement benefits.

176.    Defendants, by charging the excessive portion of its QDRO review fee, breached their fiduciary duties pursuant to ERISA § 404(a)(1)(A)(ii), 29 U.S.C. § 1104(a)(1)(A)(ii), because the excessive and unreasonable portion of this fee did not result in the provision of any additional services to the Plaintiffs and thus, by failing to eliminate the excessive portion of this fee, Defendants failed to defray/eliminate an unreasonable expense in administering the Plaintiff Plans.

177.    Defendants, by charging the excessive and unreasonable portion of its QDRO review fee, breached their fiduciary duties pursuant to ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), because a prudent fiduciary acting in a like capacity and familiar with such matters would have ensured that the Plaintiff Plans and the Plaintiff Participants only paid a fee

for QDRO services that was proportionate to the services actually rendered, and the expenses incurred (or the expenses a service provider acting prudently would have incurred) in rendering such services.

178.   As a direct, proximate and foreseeable result of Defendants' breaches of fiduciary duties pursuant to ERISA §§ 404(a)(1)(A)(i) and (ii) and (B), 29 U.S.C. §§ 1104(a)(1)(A)(i) and (ii) and (B), Plaintiffs were denied the full value of their retirement benefits.

179.   As a direct, proximate and foreseeable result of Defendants' breaches of fiduciary duty pursuant to ERISA §§ 404(a)(1)(A)(i) and (ii) and (B), 29 U.S.C. §§ 1104(a)(1)(A)(i) and (ii) and (B), the Plaintiffs suffered damages and losses.

180.   Pursuant to ERISA §§ 409 and 502(a)(2) and (3), 29 U.S.C. §§ 1109 and 1132(a)(2) and (3), Defendants are liable to the Plaintiff Plans and the Plaintiff Participants for the losses they suffered as a direct result of Defendants' breaches of fiduciary duties, and Plaintiff Plans and the Plaintiff Participants are entitled to an order directing Defendants to cease engaging in these violations, and other appropriate equitable relief, including but not limited to restitution and disgorgement.

## COUNT II

**LIABILITY OF DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES BY CO-FIDUCIARY PURSUANT TO ERISA §§ 405(a)(1), (2) AND (3), 29 U.S.C. §§ 1105(a)(1), (2) AND (3)**

181.   Plaintiffs repeat and allege each and every allegation set forth above as if fully set forth herein.

182.   At all relevant times, Defendants were fiduciaries to the Plaintiff Plans pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in their capacity as the Plaintiffs' QDRO administrators.

183.   Pursuant to ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), a fiduciary with respect to a plan shall be held liable for a breach of fiduciary duty of another fiduciary with respect to the same plan if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act is a breach.

184.   Pursuant to ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), a fiduciary with respect to a plan shall be held liable for a breach of fiduciary duty of another fiduciary with respect to the same plan if the fiduciary, by his failure to comply with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, has enabled such other fiduciary to commit a breach.

185.   Pursuant to ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), a fiduciary with respect to a plan shall be held liable for a breach of fiduciary duty of another fiduciary with respect to the same plan if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

186.   For the reasons set forth in paragraphs 80 to 94, a fiduciary that allows a plan to be charged a $1200 QDRO review, breaches its fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B).

187.   A&P is the plan sponsor, and fiduciary, to the Plaintiff Plan in which Plaintiff Danza is a participant.

188.   Thus, for the reasons set forth in paragraphs 80 to 94, which explain why charging a $1,200 QDRO review fee constitutes a breach of fiduciary duty under ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), A&P breached its fiduciary duties when it permitted FMTC and FIIOC to charge the Plaintiff Plan in which Plaintiff Danza is a participant, and Plaintiff Danza, a $1,200 QDRO review fee.

189.    Similarly, like A&P, the plan sponsors/other fiduciaries affiliated with all of the other Plaintiff Plans, for the reasons set forth in paragraphs 80 to 94, which explain why the charging of a $1,200 QDRO review fee constitutes a breach of fiduciary duty under ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), breached their fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), by permitting FMTC and/or FIIOC to charge such plans a $1200 QDRO review fee.

190.    All of the Employer Fiduciaries are fiduciaries to the Plaintiff Plans pursuant to ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii).

191.    FMTC and FIIOC knew that the Employer Fiduciaries were fiduciaries under ERISA § 3(21)(A), 29 U.S.C. § 1002(3)(21)(A), to the Plaintiff Plans.

192.    FMTC and FIIOC knew the Employer Fiduciaries breached their fiduciary duties in allowing the Plaintiff Plans to be charged a $1,200 QDRO review fee because, for such a large fee, their QDRO review services were limited to confirming that the submitted DRO contains the following information: (1) the names and addresses of the Participant and each Alternate Payee; (2) the amount or percentage of the Participant's benefit to be paid to the Alternate Payee; (3) the name of the Plaintiff Plan; and (4) the number of payments or time periods to which the QDRO applies; and to also confirm that the QDRO: (1) does not provide any type of benefit not otherwise provided under the Plaintiff Plan; (2) does not require the Plaintiff Plan to pay increased benefits (determined on the basis of actuarial value); and (3) does not provide for payment of a benefit that has already been assigned to another individual.

193.    FMTC and FIIOC knew the Employer Fiduciaries breached their fiduciary duties in allowing the Plaintiff Plans to be charged a $1,200 QDRO review fee because they charge a

$300 fee for certain QDRO services that are not materially different from the services they perform when they charge their $1,200 QDRO fee.

194.    FMTC and FIIOC knew the Employer Fiduciaries breached their fiduciary duties in allowing the Plaintiff Plans to be charged a $1,200 QDRO review fee because prior to 2006 they performed services that are not materially different from the services they perform for the $1200 QDRO review fee for no fee.

195.    FMTC and FIIOC knew the Employer Fiduciaries breached their fiduciary duties in allowing the Plaintiff Plans to be charged a $1,200 QDRO review fee because, on information and belief, these defendants have actual knowledge of the costs to provide these services, and on information and belief, given the nature of the QDRO review services, such costs are minimal.

196.    FMTC and FIIOC knew the Employer Fiduciaries breached their fiduciary duties in allowing the Plaintiff Plans to be charged a $1,200 QDRO review fee because, on information and belief, these defendants have actual knowledge of the profits they made on QDRO reviews by charging a $1200 QDRO review fee, and on information and belief, given the nature of the services, such costs were minimal and such profits were very large.

197.    FIIOC, which acted as a QDRO administrator/fiduciary to the Plaintiff Plans and charged Plaintiffs a QDRO review fee, knew that all of the Employer Fiduciaries, breached their fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), to the Plaintiff Plans, in agreeing to contracts with FMTC for QDRO review services which resulted in a $1200 QDRO review fee.

198.    FIIOC, which acted as a QDRO administrator/fiduciary to the Plaintiff Plans, and charged the Plaintiff Plans a $1,200 QDRO review fee, knew that its receipt of such fee was a

consequence of the Employer Fiduciaries breach of fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B).

199.    FMTC, which acted as a QDRO administrator/fiduciary to the Plaintiff Plans and charged Plaintiffs a QDRO review fee, knew that all of the Employer Fiduciaries, breached their fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), to the Plaintiff Plans, in agreeing to contracts with FMTC for QDRO review services which resulted in a $1,200 QDRO review fee.

200.    FMTC, which acted as a QDRO administrator/fiduciary to the Plaintiff Plans, and charged the Plaintiff Plans a $1,200 QDRO review fee, knew that its receipt of such fee was a consequence of the Employer Fiduciaries breach of fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

201.    Neither Defendant took any actions to stop these breaches.

202.    FMTC, as the Plaintiff Plans' QDRO administrator, knowingly participated in the Employer Fiduciaries' breaches of fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), and thus is liable for such breaches under ERISA § 405(a)(1), 29 U.S.C. §1105(a)(1).

203.    As a consequence of FMTC's failure to comply with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), in its capacity as the Plaintiff Plan's QDRO administrator, it enabled the Employer Fiduciaries to commit a breach of ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), and thus is liable for such breaches under ERISA § 405(a)(2), 29 U.S.C. §1105(a)(2).

204.    FMTC, as the Plaintiff Plans' QDRO administrator, had knowledge of the Employer Fiduciaries' breaches of fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C.

§1104(a)(B), and did not take any efforts to remedy such breaches, and thus is liable for such breaches under ERISA § 405(a)(3), 29 U.S.C. §1105(a)(3).

205.    FIIOC, as the Plaintiff Plans' QDRO administrator, knowingly participated in the Employer Fiduciaries' breaches of fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), and thus is liable for such breaches under ERISA § 405(a)(1), 29 U.S.C. §1105(a)(1).

206.    As a consequence of FIIOC's failure to comply with ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), in its capacity as the Plaintiff Plans' QDRO administrator, it enabled the Employer Fiduciaries to commit a breach of ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), and thus is liable for such breaches under ERISA § 405(a)(2), 29 U.S.C. §1105(a)(2).

207.    FIIOC, as the Plaintiff Plans' QDRO administrator, had knowledge of the Employer Fiduciaries' breaches of fiduciary duties under ERISA § 404(a)(1)(B), 29 U.S.C. §1104(a)(B), and did not take any efforts to remedy such breaches, and thus is liable for such breaches under ERISA § 405(a)(3), 29 U.S.C. §1105(a)(3).

208.    As a direct and proximate result of FIIOC's and FMTC's actions and inactions, in their capacity as co-fiduciaries to the Plaintiff Plans, Plaintiffs suffered damages and losses.

209.    Pursuant to ERISA §§ 405, 409 502(a)(2) and (3), 29 U.S.C. §§ 1105, 1109, 1132(a)(2) and (3), Defendants are liable to the Plaintiff Plans and Plaintiff Participants for the losses they suffered on account of the Defendants actions and inactions, and Plaintiff Plans and the Plaintiff Participants are entitled to an order directing Defendants to cease engaging in these violations, and other appropriate equitable relief, including but not limited to restitution and disgorgement.

## COUNT III

### LIABILITY OF FMTC FOR BREACH OF FIDUCIARY DUTIES BY CO-FIDUCIARY PURSUANT TO ERISA §§ 405(a)(1), (2) AND (3), 29 U.S.C. §§ 1105(a)(1), (2) AND (3)

210.     Plaintiffs repeat and allege each and every allegation set forth above as if fully set forth herein.

211.     FMTC served as the trustee to the Plaintiff Plans, and thus was a fiduciary to the Plaintiff Plans under ERISA §§ 3(21)(A)(i) and (ii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), to the Plaintiff Plans.

212.     FIIOC served as the QDRO administrator to the Plaintiff Plans, and charged the $1,200 QDRO review fee.

213.     For the reasons set forth in paragraphs 107 to 111 FMTC knew the $1200 QDRO review fee was excessive.

214.     FMTC, as the Plaintiff Plans trustee, had knowledge of the FIIOC's breaches of fiduciary duties under ERISA § 404(a)(1), 29 U.S.C. §1104(a)(1), and did not take any efforts to remedy such breaches, and thus is liable for such breaches under ERISA § 405(a)(3), 29 U.S.C. §1105(a)(3).

215.     Pursuant to ERISA §§ 405, 409 502(a)(2) and (3), 29 U.S.C. §§ 1105, 1109, 1132(a)(2) and (3), FMTC is liable to the Plaintiff Plans and Plaintiff Participants for the losses they suffered on account of FMTC's inactions, and Plaintiff Plans and the Plaintiff Participants are entitled to an order directing Defendants to cease engaging in these violations, and other appropriate equitable relief, including but not limited to restitution and disgorgement.

COUNT IV

**CLAIM AGAINST FMTC FOR ITS INVOLVEMENT IN PROHIBITED TRANSACTIONS PURSUANT TO ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C) – FURNISHING SERVICES BETWEEN THE PLAINTIFF PLANS AND A PARTY IN INTEREST**

216.    Plaintiffs repeat and allege each and every allegation set forth above as if fully set forth herein.

217.    Each Employer Fiduciary committed a prohibited transaction in violation of ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), by causing the Plaintiff Plans to enter into transactions with FMTC, which transactions constituted a furnishing of QDRO administration services, for which FMTC would receive compensation that was excessive and unreasonable in light of the actual services rendered.

218.    ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), provides that, "Except as provided in section 1108 of this title:

(1)    A fiduciary with respect to a plan shall not engage in a transaction, if he knows    or should know that such transaction constitutes a direct or indirect –

\*       \*       \*       \*

(C)    furnishing of ... services ... between the plan and a party in interest;

219.    At all relevant times, the Employer Fiduciaries acted as fiduciaries with respect to their Plans pursuant to ERISA § 3(21)(A)(i) and (iii), 29 U.S.C. § 1002(21)(A)(i) and (iii).

220.    Pursuant to ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), "the term 'party in interest' means, as to an employee benefit plan-

(A)     any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan;

(B)     a person providing services to such plan; ...

221. FMTC is a party in interest with respect to the Plaintiff Plans:

a.     since it acts as a fiduciary to the Plaintiff Plans under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A); and

b.     since it provides QDRO administration services to the Plaintiff Plans, among other services.

222.   The Employer Fiduciaries caused the Plaintiff Plans to engage in the transaction with FMTC, which transaction constituted the furnishing of QDRO administration services to the Plaintiff Plans, for which FMTC received unreasonable compensation.

223.   The Employer Fiduciaries either knew, or should have known, that it hired FMTC, a party in interest, to, among other things, furnish QDRO administration services to the Plaintiff Plans.

224.   FMTC's furnishing of QDRO administration services to the Plaintiff Plans constitutes a prohibited transaction under ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), because such transaction is not exempt pursuant to ERISA § 408, 29 U.S.C. § 1108, or any administrative exemption.

225.   ERISA § 408(b), 29 U.S.C. § 1108(b), does not except the ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), prohibited transaction described in this Count because the Plaintiff Plans' assets were used to pay compensation to FMTC in an amount, which, in light of the QDRO administration services rendered, was not reasonable.

226.   Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks to enjoin FMTC from engaging in such prohibited transactions, and seeks to remedy the depletion of the

Plaintiff Plans' assets caused by this prohibited transaction violation through an order requiring FMTC to reimburse and restore to the Plaintiff Plans all property of the Plaintiff Plans and Participants, and disgorge all amounts by which it profited from the sale of such property of the Plaintiff Plans and Participants, in excess of the compensation that was reasonable for QDRO administration services, which FMTC received, and the benefit of which equity does not permit FMTC to retain.

## COUNT V

**CLAIM AGAINST FMTC FOR ITS INVOLVEMENT IN
PROHIBITED TRANSACTIONS PURSUANT TO ERISA §
406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D) – TRANSFERRING
PLAN ASSETS TO A PARTY IN INTEREST**

227.    Plaintiffs repeat and allege each and every allegation set forth above as if fully set forth herein.

228.    The Employer Fiduciaries committed prohibited transactions in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), by causing the Plaintiff Plans to enter into transactions, which constituted the transfer of the Plaintiff Plans' assets to FMTC, a party in interest, and which transfers resulted in the unlawful depletion of the Plaintiff Plans' assets since the compensation paid to FMTC for the provision of QDRO administration services came from the Plaintiff Plans' assets, and was excessive and unreasonable in light of the actual services rendered.

229.    ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), provides that, "Except as provided in section 1108 of this title:

    (1)    A fiduciary with respect to a plan shall not engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect –

             *      *      *      *

    (D)    transfer to ... a party interest, of any assets of the plan; ...

230.    At all relevant times, the Employer Fiduciaries acted as fiduciaries with respect to their Plaintiff Plans pursuant to ERISA § 3(21)(i) and (iii), 29 U.S.C. § 1002(21)(i) and (iii).

231.    Pursuant to ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), "the term 'party in interest' means, as to an employee benefit plan-

(A)   any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan;

(B)   a person providing services to such plan; ...

232.   FMTC is a party in interest with respect to the Plaintiff Plans:

a.   since it acts as a fiduciary to the Plaintiff Plans under ERISA §§ 3(21) and 402(a), 29 U.S.C. §§ 1002(21) and 1102(a); and

b.   since it provides QDRO administration services to the Plaintiff Plans, among other services.

233.   The Employer Fiduciaries caused the Plaintiff Plans to engage in transactions constituting a transfer of the Plaintiff Plans' assets to FMTC by authorizing such transfer of Plaintiff Plan assets.

234.   The Employer Fiduciaries' either knew, or should have known, that assets of the Plaintiff Plans were transferred to FMTC, a party in interest.

235.   This transfer of the Plaintiff Plans' assets to FMTC for QDRO administration services constituted a prohibited transaction under ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), because such transaction is not exempt pursuant to ERISA § 408, 29 U.S.C. § 1108, or any administrative exemption.

236.   ERISA § 408(b), 29 U.S.C. § 1108(b), does not except the ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibited transaction described in this Count because the Plaintiff Plans' assets were used to pay compensation to FMTC in an amount, which, in light of the QDRO administration services rendered, was not reasonable.

237.   Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seeks to enjoin FMTC from engaging in such prohibited transactions, and seek to remedy the depletion of the Plaintiff Plans' assets caused by these prohibited transactions through an order requiring FMTC

to reimburse and restore to the Plaintiff Plans and Participants all property of the Plaintiff Plans and Participants, and disgorge all amounts by which FMTC profited from the sale and transfer of such property to FMTC, which property belonged to the Plaintiff Plans and Participants, was in excess of the compensation that was reasonable for the QDRO administration services rendered, and the benefits of which equity does not permit FMTC to retain.

## COUNT VI

**CLAIM AGAINST FIIOC FOR ITS INVOLVEMENT IN PROHIBITED TRANSACTIONS PURSUANT TO ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C) – FURNISHING SERVICES BETWEEN THE PLAINTIFF PLANS AND A PARTY IN INTEREST**

238.    Plaintiffs repeat and allege each and every allegation set forth above as if fully set forth herein.

239.    The Employer Fiduciaries and/or FMTC, committed prohibited transactions in violation of ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), by causing the Plaintiff Plans to receive QDRO administration services from FIIOC, for which FIIOC received compensation that was excessive and unreasonable in light of the actual services rendered.

240.    ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), provides that, "Except as provided in section 1108 of this title:

> (1)    A fiduciary with respect to a plan shall not engage in a transaction, if he knows      or should know that such transaction constitutes a direct or indirect –
>
> \*      \*      \*      \*
>
> (C)    furnishing of ... services ... between the plan and a party in interest;

241.    At all relevant times, the Employer Fiduciaries acted as fiduciaries with respect to their Plaintiff Plans pursuant to ERISA § 3(21)(i) and (iii), 29 U.S.C. § 1002(21)(i) and (iii).

242.    At all relevant times, FMTC acted as a fiduciary with respect to the Plaintiff Plans pursuant to ERISA § 3(21)(i) and (iii), 29 U.S.C. § 1002(21)(i) and (iii).

243.    Pursuant to ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), "the term 'party in interest' means, as to an employee benefit plan-

(A)    any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan;

(B)    a person providing services to such plan; ...

244.    FIIOC is a party in interest with respect to the Plaintiff Plans since it:

a.    acts as a fiduciary to the Plaintiff Plans under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A); and

b.    provides QDRO administration services to the Plaintiff Plans.

245.    The Employer Fiduciaries and/or FMTC caused the Plaintiff Plans to engage in the transaction at issue by securing the services of FIIOC to furnish QDRO administration services to the Plaintiff Plans for unreasonable compensation.

246.    The Employer Fiduciaries and/or FMTC either knew, or should have known, that it hired FIIOC, a party in interest, to, among other things, furnish QDRO administration services to the Plaintiff Plans.

247.    FIIOC's furnishing of QDRO administration services to the Plaintiff Plans constitutes a prohibited transaction under ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), because such transaction is not exempt pursuant to ERISA § 408, 29 U.S.C. § 1108, or any administrative exemption.

248.    ERISA § 408(b), 29 U.S.C. § 1108(b), does not except the ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), prohibited transaction described in this Count because Plaintiff Plan assets were used to pay compensation to FIIOC, which, in light of the QDRO administration services rendered, was not reasonable.

249.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek to enjoin FIIOC from engaging in such prohibited transactions, and seeks to remedy the depletion of the

Plaintiff Plans' assets caused by this prohibited transaction violations through an order requiring FIIOC to reimburse and restore to the Plaintiff Plans all property of the Plaintiff Plans and Participants, and disgorge all amounts by which it profited from the sale of such property of the Plaintiff Plans and Participants, in excess of the compensation that was reasonable for QDRO administration services, which FIIOC received, and the benefits of which equity does not permit FMTC to retain.

## COUNT VII

### CLAIM AGAINST FIIOC FOR ITS INVOLVEMENT IN PROHIBITED TRANSACTIONS PURSUANT TO ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D) – TRANSFERRING PLAN ASSETS TO A PARTY IN INTEREST

250.    Plaintiffs repeat and allege each and every allegation set forth above as if fully set forth herein.

251.    The Employer Fiduciaries and/or FMTC committed prohibited transactions in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), by causing the Plaintiff Plans to transfer Plaintiff Plan assets to FIIOC, a party in interest, which transfer resulted in the unlawful depletion of the Plaintiff Plans' assets since the compensation paid to FIIOC for the provision of QDRO administration services came from the Plaintiff Plans' assets, and was excessive and unreasonable in light of the actual services rendered.

252.    ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), provides that, "Except as provided in section 1108 of this title:

> (1)    A fiduciary with respect to a plan shall not engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect –
>
> *       *       *       *
>
> (D)    transfer to ... a party interest, of any assets of the plan; ...

253.    At all relevant times, the Employer Fiduciaries acted as fiduciaries with respect to their Plaintiff Plans pursuant to ERISA § 3(21)(i) and (iii), 29 U.S.C. § 1002(21)(i) and (iii).

254.    At all relevant times, FMTC acted as a fiduciary with respect to the Plaintiff Plans pursuant to ERISA § 3(21)(i) and (iii), 29 U.S.C. § 1002(21)(i) and (iii).

255.    Pursuant to ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), "the term 'party in interest' means, as to an employee benefit plan-

    (A)    any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan;

    (B)    a person providing services to such plan; ...

256.    FIIOC is a party in interest with respect to the Plaintiff Plans since it:

    a.    acts as a fiduciary to the Plaintiff Plans under ERISA §§ 3(21) and 402(a), 29 U.S.C. §§ 1002(21) and 1102(a); and

    b.    provides QDRO administration services to the Plaintiff Plans.

257.    The Employer Fiduciaries and/or FMTC caused the Plaintiff Plans to engage in the transactions at issue, which transactions constituted a transfer of the Plaintiff Plans' assets to FIIOC.

258.    The Employer Fiduciaries and/or FMTC either knew, or should have known, that assets of the Plaintiff Plans were transferred to FIIOC, a party in interest.

259.    This transfer of the Plaintiff Plans' assets to FIIOC for the QDRO administration services FIIOC furnished to the Plaintiff Plans, constitutes a prohibited transaction under ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), because such transaction is not exempt pursuant to ERISA § 408, 29 U.S.C. § 1108, or any administrative exemption.

260.    ERISA § 408(b), 29 U.S.C. § 1108(b), does not except the ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibited transaction described in this Count because Plaintiff Plan assets were used to pay compensation to FIIOC in an amount, which, in light of the QDRO administration services rendered, was not reasonable.

255.    Pursuant to ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), "the term 'party in interest' means, as to an employee benefit plan-

    (A)    any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan;

    (B)    a person providing services to such plan; ...

256.    FIIOC is a party in interest with respect to the Plaintiff Plans since it:

    a.    acts as a fiduciary to the Plaintiff Plans under ERISA §§ 3(21) and 402(a), 29 U.S.C. §§ 1002(21) and 1102(a); and

    b.    provides QDRO administration services to the Plaintiff Plans.

257.    The Employer Fiduciaries and/or FMTC caused the Plaintiff Plans to engage in the transactions at issue, which transactions constituted a transfer of the Plaintiff Plans' assets to FIIOC.

258.    The Employer Fiduciaries and/or FMTC either knew, or should have known, that assets of the Plaintiff Plans were transferred to FIIOC, a party in interest.

259.    This transfer of the Plaintiff Plans' assets to FIIOC for the QDRO administration services FIIOC furnished to the Plaintiff Plans, constitutes a prohibited transaction under ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), because such transaction is not exempt pursuant to ERISA § 408, 29 U.S.C. § 1108, or any administrative exemption.

260.    ERISA § 408(b), 29 U.S.C. § 1108(b), does not except the ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibited transaction described in this Count because Plaintiff Plan assets were used to pay compensation to FIIOC in an amount, which, in light of the QDRO administration services rendered, was not reasonable.

{00244300.DOC}                                    53

261.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek to enjoin FIIOC from engaging in such prohibited transactions, and seeks to remedy the depletion of the Plaintiff Plans' assets caused by these prohibited transaction violations through an order requiring FIIOC to reimburse and restore to the Plaintiff Plans and Participants all property of the Plaintiff Plans and Participants, and disgorge all amounts by which FIIOC profited from the sale and transfer of such property to FIIOC, which property belonged to the Plaintiff Plans and Participants, was in excess of the compensation that was reasonable for the QDRO administration services rendered, and which equity does not permit FIIOC to retain.

## COUNT VIII

### FMTC AND FIIOC ENGAGED IN PROHIBITED TRANSACTIONS UNDER ERISA § 406(B)(1), 29 U.S.C. § 1106(B)(1), BY RECEIVING UNREASONABLE COMPENSATION FROM THE PLAN

262.    ERISA § 406(b), 29 U.S.C. § 1106(b), provides that "[a] fiduciary with respect to

a plan shall not –

> (1)    deal with the assets of the plan in his own interest or for his own account, ...

> (3)    receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

263.    However, pursuant to ERISA § 408(c), 29 U.S.C. § 1108(c), a fiduciary with

respect to the plan is not prohibited, as otherwise established under ERISA § 406(b), 29 U.S.C. §

1106(b), from:

> (2)    receiving any reasonable compensation for services rendered, or for the reimbursement of expenses properly and actually incurred, in the performance of his duties with the plan; ...

264.    FMTC and FIIOC are fiduciaries with respect to the plan.

265.    FMTC and FIIOC dealt with the assets of the plan in their own interest when they

received excessive and unreasonable compensation for the performance of QDRO administration

services – a fiduciary function – and thus engaged in transactions prohibited under ERISA §

406(b)(1), 29 U.S.C. § 1106(b)(1), by receiving this excessive and unreasonable compensation.

266.    FMTC and FIIOC received consideration for their own personal account from the

Plaintiff Plans, or a party dealing on behalf of the Plaintiff Plans, in connection with the

performance of QDRO administration services, for which the consideration received was

excessive and unreasonable, and thus engaged in transactions prohibited under ERISA §
406(b)(3), 29 U.S.C. § 1106(b)(3).

267.   Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), FMTC and FIIOC are
liable to the Plaintiff Plans and Plaintiff Participants for the losses they suffered on account of
these prohibited transactions.

268.   Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks to enjoin
FMTC and FIIOC from engaging in such prohibited transactions, and seeks to remedy the
depletion of Plaintiff Plan assets caused by this prohibited transaction violation through an order
requiring FMTC and FIIOC to reimburse and restore to the Plaintiff Plans and Plaintiff
Participants all property of the Plaintiff Plans and Plaintiff Participants, and disgorge all amounts
by which FMTC and FIIOC profited from the sale and transfer of such property to FMTC and
FIIOC, which property belonged to the Plaintiff Plans and Plaintiff Participants, was in excess of
the compensation that was reasonable for the QDRO administration services rendered, and which
equity does not permit FMTC and FIIOC to retain.

**PRAYER FOR RELIEF**

      **WHEREFORE,** Plaintiffs pray that this Court:

      (1)    Certify this action as a class action pursuant to FED. R. CIV. P. 23(a), 23(b)(1), 23(b)(2) and/or 23(b)(3);

      (2)    Declare that Defendants FMTC and FIIOC were fiduciaries to the Plaintiff Plans pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A);

      (3)    Declare that Defendants violated ERISA §§ 404(a)(1)(A)(i) and (ii) and (B) (3), 29 U.S.C. §§ 1104 a)(1)(A)(i) and (ii) and (B), by charging the Plaintiffs unreasonable and excessive fees;

      (4)    Declare that Defendants are liable for breach of fiduciary duties by a co-fiduciary, pursuant to ERISA §§ 405(a)(1), (2) AND (3), 29 U.S.C. §§ 1105(a)(1), (2) and (3);

      (5)    Declare that Defendants engaged in prohibited transactions pursuant to ERISA §§ 406(a)(1)(C) and (D) and (b), 29 U.S.C. §§ 1106(a)(1)(C) and (D) and (b); (6)    Order that, pursuant to ERISA §§ 502(a)(2) and (3), 29 U.S.C. §§ 1132(a)(2) and (3), Defendants make disgorgement of all excessive fees charged to the Plaintiffs and refund such monies to the Plaintiffs;

      (6)    Order that, pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), Defendants pay to Plaintiffs monetary damages;

      (7)    Order that, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Defendants abstain from the practices described herein that violate ERISA;

      (8)    Order that, pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), Plaintiffs be paid reasonable costs and attorneys fees;

(9)    Order the Defendants to pay damages to Plaintiffs in an amount sufficient to restore them to the position they would have been in had the wrongs alleged herein not been committed; and

(10)    Award interest, costs, and such other further equitable and legal relief as it deems just and proper under the circumstances.

**JURY DEMAND**

The Plaintiffs demand a trial by jury for all issues and claims above so triable.

Dated: September 19, 2011

> Respectfully submitted,
> **SZAFERMAN, LAKIND,**
> **BLUMSTEIN, & BLADER, P.C.**
>
> By:  s/Arnold Lakind
>
> Arnold C. Lakind
> Brian G. Paul
> Robert L. Lakind
> Mark Fisher
> 101 Grovers Mill Road, Suite 200
> Lawrenceville, NJ 08648
> (609) 275-4511
>
>
> **LEVY PHILLIPS & KONIGSBERG, LLP**
>
> By:  s/ Moshe Maimon
>
> Moshe Maimon
> Danielle Disporto
> 800 Third Ave.
> New York, NY 10022
> (212) 605-6200
>
>
> *Attorneys for Plaintiffs*