UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICHOLAS DANZA, individually and on behalf of defined contribution plans that used Defendants as their qualified domestic relations order service provider and all similarly situated beneficiaries of such ERISA-covered employee benefit plans,<br><br>       Plaintiffs,<br><br>       v.<br><br>FIDELITY MANAGEMENT TRUST COMPANY and FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY,<br><br>       Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 11-2893<br>(JEI/KMW)<br><br><br>**OPINION** |

**APPEARANCES:**

SZAFERMAN, LAKIND, BLUMSTEIN, BLADER & LEHMANN, PC
Arnold Carl Lakind, Mark A. Fisher and Robert Lawrence Lakind
Quakerbridge Executive Center
101 Grovers Mill Road
Suite 200
Lawrenceville, NJ 08648
       and
LEVY PHILLIPS KONINGSBERG
Danielle Disporto and Moshe Maimon
101 Grovers Mill Road
Suite 200
Lawrenceville, NJ 08648
       Counsel for Plaintiffs

GRAHAM CURTIN, PA
Thomas Curtin and George C. Jones
4 Headquarters Plaza
PO Box 1991
Morristown, NJ 07962

1

Counsel for Defendants

**IRENAS,** Senior District Judge:

Plaintiffs allege that Defendants charged excessive and unreasonable fees for services related to their ERISA governed defined contribution plans (hereinafter "401(k) Plans"). Presently before the Court is Defendants' Motion to Dismiss for failure to state a claim.

**I.**

Great Atlantic & Pacific Tea Company, Inc. ("A&P") employed Plaintiff Danza whom participated in A&P's 401(k) Plan ("A&P Plan"). (Compl. ¶ 20) Generally, ERISA's anti-alienation provision prohibits the assignment of a 401(k) Plan participant's interest. (Compl. ¶ 2) One exception is the division of marital property pursuant to a qualified domestic relations order ("QDRO"). *See* 29 U.S.C. § 1056(d)(3). A QDRO is a domestic relations order ("DRO") that satisfies certain statutory criteria. 29 U.S.C. § 1056(d)(3)(B)(ii). Upon receipt of a DRO, the 401(k) Plan administrator must review and qualify the DRO as a QDRO within a reasonable period of time.[1] *See* 29 U.S.C. §

---

[1] While it is clear that the Plan administrator must develop procedures for DRO qualification, it is unclear whether the Plan administrator is the only private entity that may qualify a DRO as a QDRO under the statute. *See* 29 U.S.C. § (d)(3)(H)(i) ("During any period in which the issue of whether a domestic relations order is a qualified domestic relations order is being

1056(d)(3)(G)(ii). DRO qualification may require significant work to comply with onerous statutory requirements. *See* 29 U.S.C. § 1056(d)(3) (listing requirements to qualify a DRO as a QDRO).

Defendant Fidelity Management Trust Company ("FMTC") served as trustee of the A&P Plan. (Compl. ¶¶ 25-26) Relevant to the instant dispute, A&P contracted with FMTC to provide QDRO services under the A&P Plan. (*See* Trust Agreement § 1(ll) & Sched. A) Fidelity Investments Institutional Operations Company ("FIIOC") is an agent or affiliate of FMTC, and is the entity that actually provided those services.[2] (*See* Trust Agreement § 18(a))

To qualify DROs, Defendants created an internet based DRO generator for plan participants. To review and qualify a DRO created on Defendants' website, Defendants charged $300. (*See* Trust Agreement, Def.'s Cert. Ex. 1, Sched. B at 110) To qualify a DRO created by a third party, Defendants charged $1,200. (*Id.*)

Lead class Plaintiff Danza used the third party All Pro QDRO, LLC to draft a DRO at a price of $475. (*Id.* at ¶ 86) In

---

determined (by the plan administrator, by a court of competent jurisdiction *or otherwise*), the plan administrator shall separately account for the amounts . . . .") (emphasis added); *see also Metropolitan Life Ins. Co. v. Bigelow*, 283 F.3d 436 (2d. Cir. 2002) (holding that the Court - as opposed to the Plan administrator - could make the initial determination of which competing DRO was qualified). The resolution of this issue, however, is not dispositive to the current dispute.

[2] FIIOC is not a signatory to the Trust Agreement.

3

compliance with the fee schedule, Defendants charged Danza $1,200 to review and qualify the DRO. (Compl. ¶¶ 86-87) Plaintiffs allege that this fee was unreasonable.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).

While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

4

misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

When evaluating a Rule 12(b)(6) motion to dismiss, the Court considers "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). A document that forms the basis of a claim is one that is "integral to or explicitly relied upon in the complaint." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Here, Plaintiff does not dispute that the Court should properly consider the Trust Agreement between A&P and FMTC attached as Exhibit 1 to Defendant's Motion to Dismiss.

## III.

In Counts I-III, Plaintiffs allege Defendants breached fiduciary and co-fiduciary duties under ERISA §§ 404-05. Counts IV-VIII allege claims for prohibited transactions pursuant to ERISA § 406.

The crux of Defendants' arguments in support of dismissal is that FMTC is not a fiduciary with respect to its service fees and, therefore, cannot be held liable to plan participants.[3] In

_____

[3] It is unclear whether Defendants seek to dismiss claims against FIIOC; however, if FMTC is not a fiduciary as trustee then FIIOC cannot be a fiduciary as merely the QDRO service

response, Plaintiffs offer two reasons why FMTC is a fiduciary:
(1) FMTC is the trustee of the A&P Plan and (2) FMTC has
discretion to administer the plan.

> A person is a fiduciary with respect to a plan to the
> extent (i) he exercises any discretionary authority or
> discretionary control respecting management of such plan
> or exercises any authority or control respecting
> management or disposition of its assets . . . or (iii) he
> has any discretionary authority or discretionary
> responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

ERISA imposes upon a fiduciary strict duties to plan
participants and beneficiaries. *See* 29 U.S.C. § 1104(a)(1)(A)-
(D). For example, fiduciaries must "defray[] reasonable expenses
of administering the plan." 29 U.S.C. § 1104(a)(1)(A)(ii). If
FMTC is a fiduciary, then FMTC may not charge unreasonable
service fees,[4] and Defendants offer no alternative argument for
dismissal.[5]

An entity is only a fiduciary, however, to the extent it
exercises control over the particular activity at issue. *See*
*Renfro v. Unisys Corp.*, 671 F.3d 314, 321 (3d Cir. 2011). In
other words, an entity can act both as a fiduciary and non-

provider.

[4] Defendants do not contend at this stage in the litigation
that the QDRO service fees were reasonable as a matter of law.

[5] By letter dated April 23, 2012, Defendants withdrew their
argument that Plaintiffs failed to submit a pre-suit demand on
the plan's trustees in light of *Santomenno v. John Hancock Ins.
Co.*, 678 F.3d 178 (3d Cir. 2012).

fiduciary depending on the particular function at issue.

Plaintiffs concede that FMTC was not a fiduciary when it negotiated QDRO service provider fees at arms-length with A&P before signing the Trust Agreement. (Pl.'s Br. Opp. 7) Plaintiffs also concede that Defendants competently performed the QDRO services. Instead, Plaintiffs argue that, upon becoming trustee, FMTC also became a fiduciary, which obligated FMTC to refuse to accept unreasonable service fees.

*Renfro*, however, forecloses this argument. 671 F.3d 314. There, the Third Circuit affirmed the dismissal of Fidelity corporate entities because they were not Plan fiduciaries with respect to the disputed conduct.[6] Prior to becoming trustee, Fidelity negotiated its service fees at arms-length with Unisys. *Id.* at 324. The *Renfro* Court determined that "Fidelity owes no fiduciary duty with respect to the negotiation of its fee compensation by Unisys." *Id.* Though not specifically mentioned in the *Renfro* decision, the obvious implication is that Fidelity may also charge and collect the negotiated service fee.

Here, Plaintiffs do not allege that the negotiations process was anything but arms-length. According to *Renfro*, Defendants owed no duty to Plaintiffs regarding the reasonableness of the QDRO service fees. *Id.* Plaintiffs' claims, without offering an opinion as to whether a claim would be meritorious, are properly

---

[6] FMTC was, as here, the plan trustee.

7

against A&P - the named fiduciary who negotiated on behalf of the A&P Plan. Accordingly, Counts I-III alleging breaches of fiduciary and co-fiduciary duties will be dismissed.

Nor can Plaintiff sustain claims for prohibited transactions without establishing that Defendants were fiduciaries with respect to the allegedly unreasonable fees. "A fiduciary with respect to a plan shall not cause the plan to engage in a transaction" that fulfills certain prohibited criteria. 29 U.S.C. § 1106(a)(1); *see also Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1130-31 (3d Cir. 1983) (describing that the purpose of the prohibited transaction section of ERISA is to "prohibit[] various types of self-dealing by fiduciaries."). Plaintiffs cannot maintain claims for prohibited transactions because Defendants were not fiduciaries with respect to the service fees negotiated at arms-length. Accordingly, Counts IV-VIII alleging prohibited transactions must also be dismissed.

**IV.**

For the foregoing reasons, the Defendants' Motion to Dismiss will be granted in full. Plaintiff will be granted leave to file a motion to amend the Complaint within 14 days of this Opinion. *See Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (holding that district courts "must permit a curative amendment unless such an amendment would be inequitable or

futile."). An appropriate Order accompanies this Opinion.


Dated: 8/20/12                    ___/s/ Joseph E. Irenas___

                                  **JOSEPH E. IRENAS, S.U.S.D.J.**

9